ALFRED A. FRANKS & others *vs.* ROBERT T. MARKSON & others.

Suffolk.    November 6, 1957. — April 8, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Equity Pleading and Practice,* Parties.    *Corporation,* Corporate entity. *Trade Name.    Contract,* Trade name.    *Unlawful Interference.    Unfair Competition.*

The mere fact that a corporation having a place of business in Massachusetts and served with process in a suit in equity here wholly owned other corporations beyond the jurisdiction of the court would not make a decree granting equitable relief against the parent corporation effective against the other corporations.    [282]

A court of equity is not precluded from entertaining a suit by the fact that some of the parties interested in the subject matter of the suit are beyond the jurisdiction of the court, if they are not indispensable parties, but may proceed to adjudicate the rights of such parties as are before it and make a decree binding them.    [283]

In a suit in equity between two groups involving a controversy as to the use of trade names in connection with men's ready made clothing businesses, certain members of the defendant group who were beyond the jurisdiction of the court were not indispensable parties and the suit might proceed as to the parties before the court.    [284]

A contract between two groups engaged in men's ready made clothing businesses, whereby one group acknowledged that certain names and "any and all variations . . . and derivatives thereof" were "the sole and exclusive trade names and property" of the other group and the second group granted to the first "the sole and exclusive right to use" the names in six specified States, gave the second group all the rights which the law customarily attaches to trade names and by implication included a promise by the first group not to do anything derogating from such rights of the second group outside the six specified States.    [284-285]

Use of the trade name "Bill Benton" in connection with a men's ready made clothing business did not infringe the trade name "Jim Clinton" as used in connection with a like business operated and advertised in the same manner, since there was not a reasonable likelihood of confusion of the two names by the buying public.    [285-286]

BILL IN EQUITY, filed in the Superior Court on March 5, 1956.

Certain matters were reported by *Dewing,* J.

*George A. McLaughlin, (Arthur M. Gilman & Jerome P. Facher* with him,) for the defendants.

*Edward O. Proctor, (Charles M. Goldman & Robert K. Lamere* with him,) for the plaintiffs.

SPALDING, J. The objective of this bill in equity is to enjoin the violation of a contract made by the plaintiffs and the defendants concerning, among other things, the right to the use of a trade name. The defendants set up the following by way of defence: (1) a plea in abatement, (2) a motion to decline jurisdiction,[1] (3) a "plea" of forum non conveniens, and (4) a demurrer. At a hearing on the pleas and motion, evidence was introduced on the issues raised by the pleas, and an interlocutory decree was entered overruling the pleas and denying the motion. An interlocutory decree was also entered overruling the demurrer. The judge, being of opinion that these interlocutory decrees so affected the merits of the case that the questions ought to be determined by this court before further proceedings, reported the case. G. L. (Ter. Ed.) c. 214, § 30. The report includes a report of the evidence introduced in connection with the pleas and the findings of material facts made thereon.

We summarize the averments of the bill as follows. The plaintiff Alfred A. Franks, hereinafter called Franks, is the sole stockholder in the three corporate plaintiffs (Samson, Crane Co., Lawrence Clothing Mfg. Corp., and Crane's Clothes, Inc.). His wife, Florence, and their minor children, John and Virginia, all of whom own stock in subsidiary corporations, are also plaintiffs, the children being represented by their father and mother as guardians. For convenience they will be sometimes referred to hereinafter as the Franks group.

About 1940 Franks started the "Jim Clinton" clothing business, dealing principally in the manufacture and sale of "men's ready made clothing of the lower price range."

---

[1] The basis for the motion to decline jurisdiction was that the relief sought "necessarily requires the performance of positive acts" in other jurisdictions.

"Its merchandise was widely advertised in distinctive fashion, under the name Jim Clinton, in newspapers, and by radio and television." The advertisements carried a "distinctive picture of a man." Merchandise was sold by means of "pipe rack operation," so called, requiring a minimum of service, so that prices have been kept relatively low. "The name Jim Clinton became widely known . . . and the business, so known, was highly successful."

There are now seven Jim Clinton stores in Massachusetts and New Hampshire which are operated by one of the plaintiff corporations, and another corporate plaintiff manufactures most of the clothing sold in these stores.

In 1946 Franks and the individual defendants, Robert T. and Yoland D. Markson, as joint venturers, undertook to open and operate Jim Clinton stores in California. In April, 1951, due to friction, Franks and the Marksons decided to separate and to divide their interests, the New England business going to Franks and the California business going to the Marksons. On May 31, 1951, a contract was drawn up and executed between the Franks group (on the one hand) and (on the other hand) the Markson group, consisting of the defendants Robert T. and Yoland D. Markson, the defendant Markson Bros. (a Maine corporation), and sixteen corporations (named as defendants in the bill) which were associated with the Jim Clinton business in California.

With regard to the ownership and rights to the use of the name Jim Clinton the contract provided: "The Markson group acknowledges that the names 'Clinton Clothing,' 'Jim Clinton,' and any and all variations . . . and derivatives thereof, are the sole and exclusive trade names and property of the Franks group . . . ." The Franks group granted to the Markson group "the sole and exclusive right to use the names 'Clinton Clothing,' 'Jim Clinton,' and any and all variations . . . and derivatives thereof, in the States of California, Washington, Oregon, Idaho, Arizona and Nevada" without paying any compensation for the right. Nothing in the agreement "shall be deemed to prevent the

Markson group, or any of them . . . from taking advantage of or making use of said names . . . in such States or locations where by final determination . . . in a court of competent jurisdiction the exclusive right of the Franks group . . . to said names . . . has been denied"; but the Markson group were not to initiate any proceedings which would put in issue the right of the Franks group to the exclusive use of these names.

The Markson group, it is alleged, in violation of the contract have opened stores in Texas, Colorado, and Oklahoma, and are about to open stores in New Mexico and additional stores in Texas, "using the Jim Clinton type of merchandising [and] advertising, substituting, however, the closely similar name 'Bill Benton,' and a closely similar picture to the one used in the Jim Clinton advertising and signs . . . ."

Concluding, the bill alleges that this use of the name Bill Benton makes it virtually impossible for the Franks group to extend the Jim Clinton chain to those States where the Bill Benton stores are operating and prays that the Markson group be enjoined from using the name Bill Benton and all variations and derivatives of Jim Clinton outside the six States agreed on in the contract.

The defendants named in the bill are all signatories of the above mentioned contract. Of these, however, only Robert T. Markson and Markson Bros. have been served with process. These two defendants filed the pleas, motion and demurrer mentioned above. The plea in abatement assigned as grounds (1) that seventeen defendants named in the bill are indispensable parties, have not been served with process, and are beyond the jurisdiction of the court, and (2) that the fourteen corporations which use the name Bill Benton are indispensable parties, have not been named in the bill, and are beyond the jurisdiction of the court.

Findings of the judge include the following: The individual plaintiffs reside in this Commonwealth; the corporate plaintiffs are incorporated in Massachusetts and have their principal place of business here. The defendant Robert T. Markson resides here, and Markson Bros. (a

Maine corporation) has a place of business here.  Yoland D. Markson resides in California.  The corporate defendants named in the bill and not served (hereinafter called the California corporations) are not within the jurisdiction of the court.  None of these corporations was engaged in the Texas, Colorado, Oklahoma and New Mexico operations complained of in the bill.  These findings are supported by evidence and are not challenged.

The judge further found that the Bill Benton corporations (which operate the stores using the Bill Benton name) were wholly owned by Markson Bros., either directly or through intermediate corporations, and ruled that the "court has jurisdiction to enjoin Markson Bros. and Robert T. Markson or any corporate instrumentalities solely owned or controlled by . . . Markson Bros. from the use of the name 'Bill Benton' . . . if . . . such use is in breach of the contract in suit."  The judge also found that the California corporations were either wholly owned or controlled by Markson Bros.[1]

The defendants attack these findings as lacking evidential support and argue that the ruling was erroneous as matter of law.  Turning first to the latter contention, we are of opinion that the judge erred in ruling that any decree entered against Markson Bros. is effective against any corporation owned or controlled by Markson Bros.  Despite the pattern of interlocking corporate ownership shown here, each of the corporations involved was a separate entity in the eyes of the law.  Markson Bros.' ownership and control of the Bill Benton corporations, if such was the fact, would not, standing alone, empower the court to enter a decree against the parent corporation which would bind the subsidiaries.  Such ownership and control did not "merge the corporations into one or . . . make either the agent of the other."  *Marsch* v. *Southern New England Railroad*, 230 Mass. 483, 497.  We do not pause to consider to what extent the findings on which this ruling was made were supported by the evidence,

---

[1] The plaintiffs concede that this finding went beyond the evidence.

for in our view it would not affect the outcome of the case.

But we are of opinion that the ruling of the judge, although not supportable on the ground assigned by him, may nevertheless be upheld. *Weidman* v. *Weidman*, 274 Mass. 118, 125. "It is a fundamental principle of equitable procedure that a court will not proceed to a final determination, which may affect third persons, without causing them to be made parties to the bill in order that after a hearing, at which they have had their day in court, their claims may be adjudicated." *Lawrence* v. *Smith*, 201 Mass. 214, 215. *Bayer & Mingolla Construction Co. Inc.* v. *Streeter*, 318 Mass. 311, 312, and cases cited. This rule may not apply, however, when necessary parties, in contradistinction to indispensable parties, are not within the jurisdiction and cannot be brought before the court. In such cases, rather than to make no determination whatsoever, the court will proceed with those persons who are before it. *Florence Sewing Machine Co.* v. *Grover & Baker Sewing Machine Co.* 110 Mass. 1, 8–10. *J. P. Eustis Manuf. Co.* v. *Saco Brick Co.* 198 Mass. 212, 219–220. As was said in the case last cited at pages 219–220, "In equity the general rule is that all persons having a material interest in the subject matter of the suit must be made parties. But, having been introduced for the purpose of justice, the rule will not be applied to accomplish its defeat, if, consistently with the merits of the case, the court can proceed to a decree as to the parties before it, even if other persons, who may be interested but over whom it does not possess jurisdiction, are absent." This principle is recognized in Rule 15 of the Superior Court (1954). See note to Rule 15 of the Superior Court (1932) at pages 54–55. There are, to be sure, instances where the absence of persons from the jurisdiction will prevent the court from going forward with the case. Thus in a minority stockholders' suit against the directors of a corporation justice requires that the corporation be bound by the result. Accordingly the court will not proceed if the corporation is not before the court; the corporation in such a case is an indispensable

party. *Turner* v. *United Mineral Lands Corp.* 308 Mass. 531, 538. See *Andersen* v. *Albert & J. M. Anderson Manuf. Co.* 325 Mass. 343, 347.

In the case at bar it would doubtless be desirable to bring all the persons interested in the outcome of this litigation before one tribunal which can decide the questions which have arisen concerning the use of the name Bill Benton. Such persons would include parties to the contract (Yoland D. Markson and the California corporations) as well as the Bill Benton corporations. The plaintiffs, however, have no way of bringing these parties before the court and they have not chosen to come voluntarily. But that fact should not preclude the plaintiffs and such of the defendants as have been served here from having their rights adjudicated here so far as possible. A decree may be framed here which will bind those who are before the court, but which will in no wise affect the rights of those who are not. Accordingly, we hold that the California corporations and the Bill Benton corporations, and Yoland D. Markson are not indispensable parties.

In view of what we are about to say concerning the demurrer there is no occasion to discuss the motion to decline jurisdiction and the "plea" of forum non conveniens. We might add, however, that we perceive no error in the judge's disposition of these matters.

Before discussing the question of whether the plaintiffs have set forth a case in their bill something should be said as to the nature of the rights created in the contract. The contract specifically provides that the Clinton names "are the sole and exclusive trade names and property of the Franks group." We think the words "trade names" and "property" are used in their legal sense, and refer to the rights which the law customarily gives to trade names and property. The further provision to the effect that the Franks group's ownership of the Clinton names includes "any . . . variations . . . and derivatives thereof" does not enlarge the group's rights to these names, but merely describes what the law would do anyway, namely, forbid the use of all

similar names in accordance with the law of trade names and unfair competition. Thus, whether there has been a violation of the contract will depend upon whether under such law there has been an infringement of the trade name.

The defendants argue that under the contract the Markson group did no more than acknowledge that the Franks group owned the Clinton names, but beyond such acknowledgment undertook no obligations with respect to the names. This contention cannot be sustained; such a construction would reduce this portion of the contract to hardly more than empty verbiage, and would not be "in accord with justice and common sense and the probable intention of the parties." *Clark* v. *State Street Trust Co.* 270 Mass. 140, 153. It is fair to infer that this provision was inserted in the agreement to accomplish something. When the Markson group acknowledged that the Franks group were the exclusive owners of the Clinton names they impliedly agreed not to use these or similar names outside the six States agreed upon. In other words, the acknowledgment on the part of the Markson group carried with it by necessary implication an agreement on their part to do nothing that would derogate from the right acknowledged. See *Old Corner Book Store* v. *Upham*, 194 Mass. 101, 104–105; *Horvitz* v. *Zalkind*, 332 Mass. 125; Williston, Contracts (Rev. ed.) § 670.

With this background we now turn to the demurrer. We are of opinion that the bill fails to set forth a case for relief and that the demurrer ought to have been sustained. In reaching this conclusion we assume that the Bill Benton and Jim Clinton businesses are identical in method of operation, and use similar methods of advertising, including the use of a distinctive picture of a man.[1] Because of this similarity the chance for confusion on the part of the public is greater than would be the case if dissimilar businesses were

---

[1] The plaintiffs allege that the use of similar methods of merchandising and advertising is a violation of the 1951 contract. That contract makes no attempt, however, to limit the right of the Markson group to run a pipe rack operation or use a picture of a man in its advertising, and no such agreement can fairly be implied. Accordingly, these acts cannot be regarded as a violation of the contract.

involved, and the matter of similarity of names must be closely scrutinized.

Admittedly, there are some similarities between the name Jim Clinton and the name Bill Benton. Both start with a short, familiar nickname. Both names end with the identical syllable "ton," and both are accented on the penult. But none of these attributes belongs exclusively to the Franks group. The use of short, easily remembered, names is a common merchandising device and part of the public domain. Something more than this must be shown to entitle the plaintiffs to injunctive relief. The ultimate test in determining whether the defendants have infringed the plaintiffs' trade name is whether there is a reasonable probability that the buying public will confuse one name with the other so that they will be induced to purchase the defendants' merchandise in the belief that it is the plaintiffs'. *Jays Inc.* v. *Jay-Originals Inc.* 321 Mass. 737, 740, and cases cited. Restatement: Torts, § 728, and comments. In the case at hand we are of opinion that there has been no infringement of the Jim Clinton name. Despite the slight similarities mentioned above, we think that no reasonable person could mistake one name for the other. They neither sound nor look alike. See *Buchanan-Anderson-Nelson Co.* v. *Breen & Kennedy,* 27 App. D. C. 573 (Henderson does not infringe Anderson); *Yeasties Products, Inc.* v. *General Mills, Inc.* 77 Fed. (2d) 523 (Ct. of Customs & Patent App.) (Yeasties does not infringe Wheaties); *Plough Chemical Co.* v. *Bullion,* 5 Fed. (2d) 117 (C. A. D. C.) (Red and White does not infringe Black and White). We have examined the many authorities cited by the plaintiffs on this point and find nothing that persuades us to reach a contrary conclusion.

The interlocutory decree overruling the plea in abatement and the "plea" of forum non conveniens and denying the motion to decline jurisdiction is affirmed. The interlocutory decree overruling the demurrer is reversed and a new decree is to be entered sustaining the demurrer. A final decree is to be entered dismissing the bill.

*So ordered.*