GENERAL FOODS CORPORATION and
Rich-SeaPak Corporation,
Plaintiffs-Appellants,

v.

The MASSACHUSETTS DEPARTMENT
OF PUBLIC HEALTH et al.,
Defendants-Appellees.

No. 80–1502.

United States Court of Appeals,
First Circuit.

Argued Feb. 13, 1981.

Decided May 13, 1981.

William H. Kitchens, Atlanta, Ga., with whom Ellis Arnall, Cleburne E. Gregory, Jr., Allen I. Hirsch, Kevin B. Getzendanner, Arnall, Golden & Gregory, Atlanta, Ga., Michael J. Quillinan, Murray D. Sayer, James M. Serafino, White Plains, N. Y., Edward J. McCormack, Jr., Joel Z. Eigerman, and McCormack & Zimble, Boston, Mass., were on brief, for plaintiffs-appellants.

Stephen S. Ostrach, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for defendants-appellees.

Before COFFIN, Chief Judge, ALDRICH, Senior Circuit Judge, WYZANSKI, Senior District Judge.*

WYZANSKI, Senior District Judge.

The appellants General Foods Corporation and Rich-SeaPak Corporation, as plaintiffs, began in the district court this action for declaratory judgment and injunctive relief, alleging the unconstitutionality of the Massachusetts open date food labeling regulation, 105 C.M.R. § 520.119. The appellees, the Massachusetts Department of Health and the Commissioner of that department, as defendants, moved to dismiss the complaint because the matter was res judicata. They contended that the judgment in *Grocery Manufacturers of America v. Department of Public Health*, Mass. Adv.Sh. 2291, —— Mass. ——, 393 N.E.2d 881 (1979) (the GMA litigation) precluded the claims made in the complaint.

The appellants filed an "Opposition to Defendants' Motion to Dismiss." The appellee filed an affidavit, and the appellants filed two affidavits. The district court considered all the affidavits and thus converted the appellee's motion into a motion for summary judgment.[1] Fed.R.Civ.P. 12(b)(6). The court then granted the motion and entered judgment for appellees.

On their appeal to this court each of the appellants contends that the judgment in the GMA litigation does not preclude it from maintaining the present action, but, as will appear, they advance somewhat different grounds for such a contention.

We first state the uncontested facts with respect to the GMA litigation which resulted in the judgment which the district court held to be preclusive. In that litigation, begun by a complaint in the Massachusetts Supreme Judicial Court before a single justice sitting in Suffolk County, the plaintiffs were two trade associations, Grocery Manufacturers of America (GMA) and American Frozen Food Institute (AFFI) and ten individual food manufacturers, each of which was a member of GMA or AFFI or both. Neither appellant General Foods, nor appellant Rich-SeaPak, nor its affiliate Rich Products was a nominal party to the GMA litigation. The defendants in that litigation were the Massachusetts Department of Health which is a defendant-appellee in the case at bar and the official predecessor of the Commissioner who is a defendant-appellee in the case at bar.

The amended complaint in that GMA litigation challenged a set of food labeling regulations, 105 C.M.R. § 520.119, on statutory and constitutional grounds, including contentions that the regulations represented an unlawful delegation of authority and were therefore violative of separation of powers and due process, that they were unconstitutionally vague, that they imposed an excessive burden on interstate commerce, that they were preempted by federal law, and that the regulations violated due process. The complaint contained no allegations of denial of equal protection.

In order to secure an expeditious determination of the GMA case by a panel of

---

* Of the District of Massachusetts, sitting by designation.

1. Erroneously, the district judge treated the motion against General Foods as though it were still a motion to dismiss, rather than a motion for summary judgment.

justices of the Supreme Judicial Court the parties submitted the case on the basis of a lengthy Statement of Agreed Facts and 126 Exhibits. On August 28, 1979 the Supreme Judicial Court rendered an opinion directing a single justice to enter a judgment for the defendants on the merits. A single justice did so on November 6, 1979.

It is undisputed (1) that General Foods has been at all relevant times a member of GMA and AFFI, the two trade associations which were among the parties plaintiff in the GMA litigation, (2) that General Foods declined an invitation to participate as a named plaintiff in the GMA litigation, but, at the request of GMA, contributed $2,500 toward the expenses of that litigation, and (3) that General Foods did not otherwise participate in or control the GMA case.

It is undisputed (1) that Rich Products, which is *not* a party to the case at bar, has been at all relevant times a member of AFFI, (2) that Rich Products declined an invitation to participate as a named plaintiff in the GMA litigation but contributed $1,000 toward the expenses of that litigation and (3) that Rich Products did not otherwise participate in or control the GMA case.

It is undisputed (1) that the appellant Rich-SeaPak Corporation has never been a member of either GMA or AFFI, (2) that so far as appears in the present record Rich-SeaPak was not aware of the GMA litigation, (3) that Rich Products and Rich-Sea-Pak have separate plants and places of business, maintain separate books and records, and manufacture and process different types of frozen foods, (4) that both corporations are similarly affected by the food labeling regulations, 105 C.M.R. § 520.119, and (5) that at all relevant times Rich Products owned 260,000 shares of class B stock of Rich-SeaPak Corporation. It seems to be undisputed that at all relevant times there was no other class B shareholders; that the 260,000 shares constituted over 39% of all the outstanding shares of Rich-SeaPak; that Rich Products as the sole owner of class B shares is entitled to elect two out of six directors of Rich-SeaPak; and that as holder of 39% of all the shares Rich Prod-

ucts is entitled to participate in the election of the fifth director and the sixth director (the latter having no voting power except in certain limited situations). There is no agreement as to who were officers or directors of Rich-SeaPak in 1979 when the GMA litigation began and was adjudicated. However, the district court had before it an undisputed affidavit of counsel of the present appellees to which was attached a page of Standard & Poor's *Register of Corporations, Directors & Executors* which identifies as of the year 1980 Robert E. Rich as Chairman of the Board of Directors of both corporations, Robert E. Rich, Jr. as President and director of Rich Products and as Vice-President and Assistant Secretary and director of Rich-SeaPak, H. J. Coffer, Jr. as a director of Rich Products and as President and Chief Executive Officer of Rich-SeaPak, David A. Rich as Secretary and a director of Rich Products, Janet W. Rich as a director of Rich Products, three other persons as directors of Rich Products, and one other person as a director of Rich-SeaPak.

## CHOICE OF LAW.

"What persons are bound by a valid judgment is determined, subject to constitutional law, by the local law of the State where the judgment was rendered." Restatement, Conflict of Laws, Second, § 94; *Riley v. New York Trust Co.*, 315 U.S. 343, 350, 62 S.Ct. 608, 612, 613, 86 L.Ed. 885 (1942); *First Nat. Bk. of Minneapolis v. City Nat. Bk.*, 182 Mass. 130, 135–136, 65 N.E.2d 24 (1902). Pursuant to that principle we conclude that the appellants are bound by the Massachusetts judgment in the GMA litigation if, but only if, Massachusetts would bind them.

Our conclusion is in accordance with two lines of Supreme Court cases which, although they did not determine which persons were affected by a judgment, laid down rules applicable generally to questions as to the preclusive effect of state court judgments in cases in which the federal court exercises, as here, a purely federal, non-diversity jurisdiction. *Allen v. McCurry,* —— U.S. ——, ——, 101 S.Ct. 411, 416,

66 L.Ed.2d 308 (1980), relying on 28 U.S.C. § 1738, held that where the state court rendering the judgment would give it a preclusive effect, federal courts *must* give it such preclusive effect. *Union & Planters' Bank v. Memphis*, 189 U.S. 71, 75, 23 S.Ct. 604, 606, 47 L.Ed. 712 (1903); *City of Covington v. First Nat. Bank*, 198 U.S. 100, 109, 25 S.Ct. 562, 564, 49 L.Ed. 963 (1905) and *Wright v. Georgia R.R. & Banking Co.*, 216 U.S. 420, 429, 30 S.Ct. 242, 245, 54 L.Ed. 544 (1910), commented on in 1A Pt. 2 Moore's Federal Practice § 0.311[2] (2d ed. 1980), held that where the state court rendering the judgment would not give it a preclusive effect, the federal courts would not give it such preclusive effect.

## CONSTITUTIONAL CONSIDERATIONS.

▮ The due process clauses of the Fifth and Fourteenth Amendments protect a nonparty from being bound by an *in personam* judgment unless in the underlying litigation he had directly or vicariously a full and fair opportunity to present evidence and argument. *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971); *Southwest Airlines Co. v. Texas International Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir.), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977); *Humphreys v. Tann*, 487 F.2d 666, 671 (6th Cir. 1973). See Note, Collateral Estoppel of Non-parties, 87 Harv. L.Rev. 1485, 1498–1500 (1974).

## THE EFFECT UPON GENERAL FOODS OF THE JUDGMENT IN THE GMA LITIGATION

▮ The Massachusetts court,[2] the federal courts,[3] and Restatement, Judgments, Second, T.D. No. 2 § 85[4] recognize that a person who is not a party to an action but

**2.** *Dwight v. Dwight*, 371 Mass. 424, 357 N.E.2d 772 (1976).

**3.** *Southwest Airlines Co. v. Texas International Airlines*, 546 F.2d 84, 95 (5th Cir.), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977).

**4.** Am.L.Inst. Restatement, Judgments, Second, T.D. No. 2 (1975) § 85 provides:

who expressly or impliedly gives a party authority to represent him may be bound by the rule of res judicata as though he were a party. Such a rule is not repugnant to the due process clauses of the Fifth and Fourteenth Amendments because the person so represented has had a vicarious opportunity to be heard in the underlying litigation.

In the instant case we need not consider whether merely by becoming a member of the two trade associations, GMA and AFFI, General Foods impliedly invested each of them with authority to bring on behalf of its members litigation challenging the validity on its face of regulations generally applicable to the trade represented by the association. Cf. *Expert Electric, Inc. v. Levine*, 554 F.2d 1227 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977); *Grossman v. Axelrod*, 466 F.Supp. 770 (S.D.N.Y.1979) *aff'd* 646 F.2d 768 (2nd Cir. 1981).

▮ Here more is involved than mere membership in a trade association. General Foods, at the request of GMA, contributed $2,500 toward the expenses of the GMA litigation in the Massachusetts courts. General Foods was chargeable with knowledge that in that litigation, inasmuch as the challenged regulations did not affect the trade association itself but only its members, GMA's standing to sue depended on its claim to represent its members as the real parties in interest. *Massachusetts Association of Independent Insurance Agents & Brokers v. Commissioner of Insurance*, 373 Mass. 290, 296–298, 367 N.E.2d 796 (1977). The claim is to represent *all* the members as a collective group. *Ibid.* p. 298, 367 N.E.2d 796. We need not decide whether a dissenting member would be bound if he gave notice or even if he did not give notice of his opposition. It is sufficient for us to say

(1) A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of the rules of res judicata as though he were a party. A person is represented by a party who is:

. . . .

(b) Invested by the person with authority to represent him in an action;

. . . .

in our view Massachusetts would hold, and we do hold, that a member of a trade association who finances an action which it brings on behalf of its members impliedly authorizes the trade association to represent him in that action. It is of no significance if a member declines to intervene in the litigation in his own name.

Our decision is not contrary to the rule illustrated in *Rumford Chemical Works v. Hygienic Chemical Co.*, 215 U.S. 156, 30 S.Ct. 45, 54 L.Ed. 137 (1909) and other cases cited in 1B Moore's Federal Practice ¶ 0.411[6] at 1565 (2d ed. 1980), that a non-party is not bound by a judgment *merely* because he paid the expenses of a litigation. In the authorities to which we have just referred, the person who made the contribution was not one whom a party purported to represent. Those authorities held that, standing alone, a contribution made by a person who is merely sympathetic with a party does not conclusively prove that he participated in or controlled the litigation; the authorities are consistent with our conclusion that a contribution made by a person to a nominal party claiming to represent him constitutes an implied authorization of that party to represent him or, if the claim of representation is made before the contribution is made, the contribution constitutes an implied affirmation or ratification of the nominal party's claim of representation.

■ Inasmuch as General Foods impliedly authorized GMA and AFFI to represent it in the GMA litigation, General Foods became bound by the Massachusetts state judgment unless it can prove that the trade associations were so inadequate in their representation that General Foods did not get a full and fair consideration of its claim. See Restatement of the Law, Second, Judgments, T.D. No. 2 (1975) § 86; and the last paragraph of Comment (a) to § 85. Cf. *Expert Electric Inc. v. Levine*, 554 F.2d

1227, 1235–36 (2nd Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977); *Bickham v. Lashof*, 620 F.2d 1238, 1246 (7th Cir. 1980).

We find no merit in the grounds upon which General Foods contends that the trade association of which it was a member failed responsibly and fairly to represent General Foods. The trade associations and others who were parties plaintiff in the GMA litigation were warranted in submitting the case to the Massachusetts Supreme Judicial Court upon an agreed statement of facts, particularly since the Commonwealth agreed not to seek enforcement of the contested labeling regulations until there was a final decision. Even if the agreed statement of facts did not have a full statement of all the facts that might have been appropriate for an adjudication, it was not an inadequate statement, particularly since the attack in the GMA case was on the alleged facial invalidity of the regulations, and the judgment entered by the Massachusetts court left free for future consideration the validity of the regulations as applied.[5] The failure of the trade associations and the other plaintiffs in the GMA litigation to raise the equal protection clause issue does not prove that General Foods was not fairly represented. "The failure of a representative to invoke all possible legal theories or to develop all possible resources of proof does not make his representation legally ineffective." Restatement, Second, Judgments, T.D. No. 2 (1975) § 86 Comment (f).

The foregoing reasoning supports the district court's judgment dismissing the complaint of General Foods. The same reasoning supports a conclusion that Rich Products—which is not a party to the case at bar—was bound by the judgment in the GMA case. But the reasoning does not extend to Rich-SeaPak which was neither a member of nor a contributor to either of the trade associations.

---

5. Since the regulations do not become effective for appellants' products until May 1, 1981 for frozen foods and May 1, 1982 for non-perishable foods, the Supreme Judicial Court applied the principle enunciated in *Cambridge Elec. Light Co. v. DPU*, 363 Mass. 474, 493, 295

N.E.2d 876 (1973) that "petitioners can ask from the court at this time an opinion only as to the apparent or surface validity of the regulations for they have yet not been put to practical use."

## THE EFFECT UPON RICH–SEAPAK OF THE JUDGMENT IN THE GMA LITIGATION

In support of the district court's judgment against Rich-SeaPak, the appellees take the position that inasmuch as Rich Products is bound by the Massachusetts judgment Rich-SeaPak is also bound by that judgment because of the relationship of the two corporations to one another.

The material facts as to which there is no genuine dispute are that the two corporations are in related businesses similarly affected by the challenged regulation; that Rich Products is bound by the judgment in the GMA case; that Rich Products owns more than 39 per cent of Rich-SeaPak's stock; and that Rich Products by virtue of its stock ownership has power to name two out of the six directors of Rich-SeaPak and has a role in naming the fifth and sixth directors, of which only one has a vote. There is no agreement and indeed no evidence as to who at the time of the Massachusetts litigation were the directors or the officers of either corporation.

The mere fact that there was between Rich-SeaPak and Rich Products an identity of interests in the GMA litigation does not bind Rich-SeaPak to the judgment to which Rich Products, by virtue of its implied authorization of AFFI to represent it in the GMA litigation, was a quasi-party. *Pollard v. Cockrell*, 578 F.2d 1002, 1008 (5th Cir. 1978); *Griffin v. Burns*, 570 F.2d 1065, 1071 (1st Cir. 1978); *Southwest Airlines Co. v. Texas International Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir.), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977).

Nor is it an adequate basis for holding Rich-SeaPak bound by the judgment that Rich Products controlled Rich-SeaPak. *Franks v. Markson*, 337 Mass. 278, 282, 149 N.E.2d 619 (1958). To be sure, if a non-party controlled a quasi-party with respect to a litigation, then the ensuing judgment would bind the non-party.[6] The reason would be that the non-party would have the power to determine what evidence and arguments should be offered in the litigation and, if appropriate, the appeal. Rich-SeaPak, being controlled by and not controlling Rich Products, had no such power.

The *Franks* case is singularly apposite to the case at bar. A parent corporation had numerous wholly owned subsidiaries which the plaintiff claimed were violating its trade name. The plaintiff was able to serve and bring within the Massachusetts court's jurisdiction the parent corporation but not sixteen of its California subsidiaries. The court held that the parent company's ownership and control of the California subsidiaries "would not, standing alone, empower the court to enter a decree against the parent corporation which would bind the subsidiaries. Such ownership or control did not 'merge the corporations into one or ... make either the agent of the other.'"[7] P. 283, 149 N.E.2d 619.

The *Franks* case applies to the case at bar inasmuch as here the undisputed evidence, even if supplemented by an inference that those who were officers and directors of Rich-SeaPak and Rich Products in 1980 held

---

**6.** See e. g. *Drier v. Tarpon Oil Co.*, 522 F.2d 199 (5th Cir. 1975) (president and major stockholder who controlled action bound); *Kreager v. General Electric Co.*, 497 F.2d 468 (2nd Cir.), *cert. denied*, 419 U.S. 861, 95 S.Ct. 111, 42 L.Ed.2d 95 (1974) (same); *Pan American Match, Inc. v. Sears, Roebuck and Co.*, 454 F.2d 871, 874 (1st Cir.), *cert. denied*, 409 U.S. 892, 93 S.Ct. 113, 34 L.Ed.2d 149 (1972) (parent corporation bound because it controlled subsidiary); *Astron Industrial Associates v. Chrysler Motors Corp.*, 405 F.2d 958 (5th Cir. 1968) (parent corporation with overlapping management bound by subsidiary); *United States v. Webber*, 396 F.2d 381 (3rd Cir. 1968) (partnership whose partners controlled corporation and owned 51% of its stock bound—same counsel had represented both corporation and partnership). *See also* 1B Moore's Federal Practice ¶ 0.411[10] (1980).

**7.** The rule in the *Franks* case applies to the problem of who is affected by a judgment the familiar rule that "common ownership of the stock of two or more corporations together with common management, standing alone, will not give rise to liability on the part of one corporation for the acts of another corporation." *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619, 233 N.E.2d 748 (1968); *Commonwealth v. Beneficial Finance Co.*, 360 Mass. 188, 290, 275 N.E.2d 33 (1971).

the same positions a year earlier, shows only common stock ownership combined with common managerial control of the two corporations.

We have not overlooked the appellees' contention that Rich-SeaPak is bound by the Massachusetts judgment because Rich Products was virtually its representative. If the doctrine of virtual representation as enunciated in cases such as *Pollard v. Cockrell, Expert Electric Inc. v. Levine,* and *Grossman v. Axelrod, supra,* goes beyond Restatement, Judgments, Second, T.D. No. 2 (1975) § 84, we are of the opinion that it does not state the law of Massachusetts and, like Judge Wisdom in *Southwest Airlines Co. v. Texas International Airlines, supra,* p. 97, we doubt its soundness.

■ Because the *undisputed* facts do not show that Rich-SeaPak controlled Rich Products, or expressly or impliedly authorized Rich Products to represent it in the GMA litigation, or participated in that litigation, we reverse the *summary* judgment against Rich-SeaPak. However, our reversal does not preclude the parties from offering at a plenary hearing evidence on questions such as whether Rich-SeaPak and Rich Products so conducted their affairs as to warrant disregard of their separate corporate entities, at least in litigation of the GMA type (*see My Bread Baking Co. v. Cumberland Farms, Inc.,* 353 Mass. 614, 618–620, 233 N.E.2d 748 (1968); *Commonwealth v. Beneficial Finance Co.,* 360 Mass. 188, 289–291, 275 N.E.2d 33 (1971)), or whether Rich-SeaPak expressly authorized or by custom or otherwise impliedly authorized Rich Products to represent it in litigation of the GMA type (*see Boyd v. Jamaia Plain Co-op Bank,* Mass.App.Ct.Adv.Sh. (1979), 337, 390, 7 Mass.App. 153, ——, 386 N.E.2d 775, further appellate review denied, Mass.Adv.Sh. (1979) 1143), or whether in other ways Rich-SeaPak had an opportunity vicariously to present evidence and argument in the GMA litigation and to appeal from an adverse decision, or whether Rich Products is using Rich-SeaPak as its agent for the purpose of evading the Massachusetts judgment in the GMA case.

*Judgment as to General Foods Corporation, affirmed.*

*Judgment as to Rich-SeaPak Corporation, vacated.*