**DATA GENERAL CORPORATION,**
**Plaintiff,**

v.

**GRUMMAN DATA SYSTEMS**
**CORPORATION,**
**Defendant.**

**Civ. A. No. 93–40087–NMG.**

United States District Court,
D. Massachusetts.

Sept. 21, 1994.

Brian A. Davis, Robert S. Frank, Jr., Choate, Hall & Stewart, Boston, MA, for plaintiff.

Gary R. Greenberg, Louis J. Scerra, Jr., Goldstein & Manello, Boston, MA, Charles A. Gilman, Robert A. Alessi, Robert A. Alessi, Cahill, Gordon & Reindel, New York City, for defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

The plaintiff, Data General Corporation ("Data General"), brought this action to recover a judgment in the amount of $52,373,-694 that it obtained against Grumman Systems Support Corporation ("GSSC"), the wholly-owned subsidiary of the defendant, Grumman Data Systems Corporation ("Grumman Data"), for copyright infringement and misappropriation of trade secrets. See *Data General Corp. v. Grumman Sys. Support Corp.*, Civil Action No. 88-0033-S (D.Mass.1993) ("the Prior Action"). Pending before this Court is Data General's motion for partial summary judgment pursuant to Fed.R.Civ.P. 56.

### BACKGROUND

On March 22, 1988, Data General sued GSSC in the United States District Court for the District of Massachusetts, alleging copyright infringement and misappropriation of trade secrets. On January 28, 1993, the jury

returned a verdict in favor of Data General. The following day, Judgment was entered in favor of Data General, and against GSSC, in the amount of $52,373,694. Data General then moved, pursuant to Fed.R.Civ.P. 15(b) and 21, to amend its complaint in the Prior Action to add Grumman Data as a defendant. On May 11, 1993, Senior Judge Walter J. Skinner denied that motion and Data General thereafter commenced this action against Grumman Data.[1]

Data General alleged in its Complaint that:

1) Grumman Data is vicariously liable under federal copyright law for the judgment entered against GSSC in the Prior Action (Count I);

2) Grumman Data is vicariously liable under federal copyright law for the previously adjudicated infringement by GSSC (Count II);

3) Grumman Data is liable, as the alter ego of GSSC, for the judgment of copyright infringement and misappropriation of trade secrets in the Prior Action (Count III);

4) Grumman Data is liable, as the alter ego of GSSC, for the previously adjudicated infringement by GSSC (Count IV).

Counts V and VI are common law claims based upon alleged fraudulent conveyances and wrongful transfers of money and property from GSSC to Grumman Data.

In its Memorandum and Order dated June 14, 1994 ("the June Memorandum and Order"), this Court: 1) denied Grumman Data's motion to dismiss for lack of personal jurisdiction, 2) allowed Grumman Data's motion to dismiss Counts II and IV of Data General's Complaint under the doctrine of *res judicata* and 3) denied Grumman Data's motion to dismiss Data General's remaining claims for lack of subject matter jurisdiction.

Data General has moved for summary judgment on Count I of its Complaint, arguing that there is no genuine issue of material fact that Grumman Data is a) vicariously liable under federal copyright law for that portion of the judgment entered against GSSC in the Prior Action for copyright infringement and b) bound by that adverse judgment because it participated in and controlled GSSC's defense of the Prior Action.[2] Data General maintains that the portion of its $52,373,694 judgment attributable to the copyright infringement claim is $33,777,744 (plus costs).[3]

## THE SUMMARY JUDGMENT STANDARD

■ The role of summary judgment is to pierce the formal pleadings and evaluate the proof to determine whether there is a genuine need for trial. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). The burden is upon the moving party to show, based upon the pleadings, discovery on file and affidavits, that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

■ If the moving party demonstrates that "there is an absence of evidence to support the non-moving party's case," the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact for trial. *FDIC v. Municipality of Ponce*, 904 F.2d 740, 742 (1st Cir.1990), *quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265

---

1. For a recitation of the factual and procedural background and legal framework in the Prior Action, see *Data General Corp., v. Grumman Sys. Support Corp.*, 36 F.3d 1147 (1st Cir.1994) (affirming district court in Prior Action on all but one minor issue).

2. Data General also moved for summary judgment on Count II of its Complaint. That motion is moot because of this Court's allowance of Grumman Data's motion to dismiss Count II.

3. Grumman Data argues that Data General elected, at the close of the Prior Action, to take

judgment only on its state law trade secrets claim and waived its right to recover judgment pursuant to its federal copyright infringement claim. Judge Skinner rejected essentially the same argument in a post-trial motion of GSSC to correct the judgment in the Prior Action. *Data General Corp. v. Grumman Sys. Support Corp.*, 825 F.Supp. 340, 346 (D.Mass.1993). The United States Court of Appeals for the First Circuit recently affirmed that decision, thus disposing of the issue. *Data General Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1178 (1st Cir.1994).

(1986). The nonmovant, however, may not rest upon mere allegation or denial of the pleadings. Fed.R.Civ.P. 56. In considering a motion for summary judgment, the Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in its favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993).

## DISCUSSION

Data General alleges in Count I that Grumman Data is vicariously liable under federal copyright law for the judgment of copyright infringement against GSSC in the Prior Action and, further, that Grumman Data is bound by that adverse judgment in this action because it participated and controlled GSSC's defense in the Prior Action.

### I. *Vicarious Liability under Federal Copyright Law*

■ A parent corporation may be held vicariously liable under federal copyright law for the infringing acts of its subsidiary if the parent has: 1) the right and ability to supervise the infringing activity of the subsidiary and 2) an obvious and direct financial interest in the exploitation of the copyrighted materials. *See Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir.1963). *See also RCA/Ariola Intern. Inc. v. Thomas & Grayston Co.,* 845 F.2d 773, 781 (8th Cir. 1988); *Southern Bell Tel. v. Association Tel. Directory,* 756 F.2d 801, 811 (11th Cir.1985); *Columbia Pictures Inc. v. Redd Horne, Inc.,* 749 F.2d 154, 160–61 (3d Cir.1984); *Milene Music, Inc. v. Gotauco,* 551 F.Supp. 1288, 1295 (D.R.I.1982). At least one Court has held that a parent corporation automatically satisfies both prongs of the *Shapiro* test by virtue of its relationship to its wholly-owned subsidiary. *Broadcast Music, Inc. v. Hartmarx Corp.,* 9 U.S.P.Q.2d 1561, 1563, 1988 WL 128691 (N.D.Ill.1988).

■ There is no genuine issue of material fact that both prongs of the *Shapiro* test are satisfied in this case. In the June Memorandum and Order, this Court set forth the following facts which establish Grumman Data's vicarious liability for the copyright infringement judgment against GSSC:

1) GSSC is a wholly-owned subsidiary of Grumman Data (which in turn is a wholly-owned subsidiary of Grumman Corporation).

2) Two of GSSC's three directors are Grumman Data employees.

3) Joseph Mulderig ("Mulderig"), President of GSSC since February 1, 1988, and also a GSSC director, has been employed by and received his compensation from Grumman Data, not GSSC, since approximately 1970.

4) Mulderig reports directly to Grumman Data's President, Gerald Sandler, who is also a GSSC director.

5) The entire first tier of GSSC's executives under Mulderig (the director of business operations, the director of operations and engineering, the controller, and the vice president for marketing and sales) are employed by Grumman Data, not GSSC, and are responsible for conducting and supervising the everyday activities of GSSC.

6) Grumman Data employees approved (either expressly or constructively) the alleged infringing conduct of GSSC. During the pertinent time period (approximately 1984 through 1987) Alan Aldrus ("Aldrus"), President of GSSC, and Mulderig, Vice President of GSSC during that time period, knew about and approved or condoned the use of MV/ADEX by GSSC.[4] Aldrus and Mulderig were employed by Grumman Data, not GSSC, when they approved GSSC's use of MV/ADEX.

7) Grumman Data, as the sole owner of GSSC, benefitted financially from GSSC's al-

4. Mulderig and Aldrus both testified, by deposition and affidavit, that they believed, prior to the litigation in the Prior Action, that GSSC was entitled to use MV/ADEX. Mulderig testified by affidavit that in December 1987 he disapproved a draft of a GSSC "Field Operation Guide" because it indicated that MV/ADES and MV/ADEX were not authorized to be used by GSSC. Gerald Sandler, president of Grumman Data, also testified by deposition that he believed, during the relevant time frame, that GSSC was entitled to use MV/ADEX. As previously noted, the president of GSSC reports directly to the president of Grumman Data.

leged infringing activity, and the use of MV/ADEX was critical to GSSC's success.[5]

Based on the foregoing considerations, this Court concludes that Grumman Data is vicariously liable, under federal copyright law, for the previously-adjudicated infringement by its wholly-owned subsidiary, GSSC.

## II. *The Control Issue*

■ In *Alman v. Danin*, 801 F.2d 1 (1st Cir.1986), the United States Court of Appeals for the First Circuit held two shareholders of a corporation, who were officers and members of the board of directors, liable for a prior judgment against the corporation, even though they were not parties to the prior action. The Court upheld the summary judgment decision of the District Court of Massachusetts to: 1) pierce the corporate veil and hold the two sole shareholders personally liable for the corporation's debts and 2) hold that the two shareholders were bound by the adverse judgment against the corporation because they had an economic stake in the outcome of the case and controlled the corporation's defense. *Id.* at 3–5.

The case at bar is analogous to *Alman* in several respects. In *Alman* there was a substantive body of law (that of piercing the corporate veil) pursuant to which the two shareholders were held liable for the actions of their corporation. Here, Grumman Data is vicariously liable, under federal copyright law, for the infringing acts of its subsidiary, GSSC. The only remaining question is whether Grumman Data should be held liable for the copyright infringement judgment against GSSC in the Prior Action, even though Grumman Data was not a named party to that action, in the same fashion that the two shareholders in *Alman* were held

liable for the judgment against their corporation. It is a two-part question: 1) Did Grumman have a sufficient economic stake in, and 2) did Grumman control GSSC's defense of, the Prior Action? The Court answers both parts in the affirmative.

■ A non-party is not bound by a judgment if it did not have a full and fair opportunity to litigate the underlying claim. *Id.* at 4 (citing several authorities). In *Alman*, however, the First Circuit recognized that nonparties who "assume control over litigation in which they have a direct financial or proprietary interest" may, consistent with due process, be held liable for an adverse judgment in that action. *Id.*, quoting *Montana v. United States*, 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979). *See also Explosives Corp. v. Garlam Enters. Corp.*, 817 F.2d 894, 906 (1st Cir.1987) ("a nonparty who controls the litigation is bound by the judgment"); *General Foods v. Massachusetts Department of Public Health*, 648 F.2d 784, 789 (1st Cir.1981) (judgment will bind a nonparty if he had the "power to determine what evidence and arguments should be offered in the litigation").

The Court in *Alman* also quoted with approval the following, somewhat broader language from *Montana:*

> [O]ne who prosecutes or defends a suit in the name of another to establish and protect his own right, *or who assists in the prosecution or defense of an action in aid of some interest of his own . . .* is as much bound . . . as he would be if he had been a party to the record.

*Id.* (emphasis added), *quoting Montana*, 440 U.S. at 154, 99 S.Ct. at 974 (citation omit-

---

5. William R. Waas ("Waas") is an employee of Grumman Data and Vice–President of Grumman Systems Support, a division of Grumman Data. He is responsible for financial, administrative and marketing services for GSSC and for the operations of Grumman Data in the eastern half of the United States. Waas testified by affidavit ("the Waas Affidavit") in November 1988 that in calendar year 1987 GSSC had total income of approximately $20 million, of which approximately half was derived from servicing Data General computers and approximately $3.5 mil-

lion was derived from servicing Data General's MV Series of computers. He testified that Data General's MV/ADES and MV/ADEX are the only diagnostics compatible with its M/V Series and opined that, if GSSC is denied the right to use and copy MV/ADEX, it could lose all of Data General's business. Based upon Waas's own calculations, this would result in a loss to GSSC of half its annual income. Grumman Data, as the sole owner of GSSC, would ultimately bear that loss.

ted).[6]

The First Circuit in *Alman* relied on the following critical findings to support its conclusion that the two shareholders were liable for the judgment against the corporation:

1. As sole shareholders, officers and members of the board of directors, they were on notice of all aspects of the prior litigation.

2. They held ultimate control over the corporation's litigation strategy.

3. One of the shareholders had negotiated the contract provision disputed in the earlier action.

4. As sole owners of the corporation, they had an economic stake in the outcome of the litigation and were in a position to know about everything that occurred.

5. The shareholders had "good reason to anticipate that they might be held personally accountable" for the corporation's defaults given the "questionable nature" of its corporate identity.

*Alman,* 801 F.2d at 5.

The Waas Affidavit (*supra* n. 5) establishes that the use of Data General's copyrighted property was critical to the financial success of GSSC. Waas testified that, if GSSC were unable to use MV/ADEX, it would lose a substantial portion of its customer base and as much as one-half ($10 million) of its annual income. It was, of course, precisely GSSC's use of MV/ADEX that Data General challenged in the Prior Action and, as the sole owner of GSSC, Grumman Data had an obvious and substantial economic stake in the outcome of that action.

The record evidence also indicates that employees and officers of Grumman Data and Grumman Corporation maintained a leading, active and pervasive role in GSSC's defense of the Prior Action. That partic-

ipation and control was manifest from the outset.

Thomas Genovese, General Counsel of Grumman Corporation, and John O'Brien, President of Grumman Corporation, responded by way of two separate letters in 1988 to Data General's demand that GSSC stop using MV/ADEX. After Data General commenced the Prior Action against GSSC on March 28, 1988, Robert Myers, President of Grumman Data, "suggested" to Joseph Mulderig, who was employed by Grumman Data to serve as President of GSSC, that he attempt to settle the case. In response, Mulderig contacted Richard Geib, Chief Patent Counsel of Grumman Corporation, who sent written settlement proposals to Data General. The proposals, which were rejected, called for the licensing of MV/ADEX by GSSC and Grumman Data.

Furthermore, in early 1991, Myers, the President of Grumman Data wrote to, and later met with, Ronald Skates, President of Data General, to discuss settlement of Data General's claims against GSSC. Those settlement discussions were unsuccessful. In late 1991, just before trial in the Prior Action, settlement discussions resumed. Three meetings were held. The representatives on the GSSC side were Gerald Sandler, the new President of Grumman Data, Patrick Killian, who was employed by Grumman Corporation as Legal Counsel for Grumman Data and, at least with respect to the Prior Action, for GSSC, and Ronald Katz, GSSC's outside trial counsel.[7] Mulderig, the President of GSSC, attended only the final meeting. Again, the settlement discussions were unsuccessful.

The trial in the Prior Action began on November 16, 1992. In his opening statement, Katz introduced two representatives of GSSC: Mulderig, President of GSSC, and William O'Neil, Director of Field Operations for GSSC.[8] Both Mulderig and O'Neil were,

---

6. The Restatement provides that a judgment against a closely-held corporation:

> is conclusive upon the holder of its ownership if he actively participated in the action on behalf of the corporation, unless his interests and those of the corporation are so different that he should have opportunity to relitigate the issue....

Restatement (Second) of Judgments § 59(3)(a).

7. Killian chose Katz to serve as lead trial counsel for GSSC in the Prior Action.

8. The opening statement of Katz was revealing. He began by introducing himself as one of the attorneys "representing Grumman" and Killian as "an in-house lawyer for Grumman." Of course, reference to "Grumman" could have been to Grumman Corporation, Grumman Data or GSSC and one would, in the absence of any

at the time, employees of, and paid by, Grumman Data. O'Neil was appointed corporate representative for GSSC and he and Mulderig testified on behalf of GSSC at the trial. Killian, Legal Counsel for both Grumman Data and GSSC, sat at counsel table and participated in GSSC's defense.

Grumman Data maintains that Mulderig, O'Neil and Killian testified at, and participated in, the Prior Action solely in their capacities as representatives of GSSC. The argument is superficial. All three were employed and paid by Grumman Data or Grumman Corporation to perform certain duties and to hold certain positions at GSSC. It is beyond peradventure that they were looking out for their ultimate employer's interests. Moreover, Killian was employed by Grumman Corporation primarily to hold the position of Legal Counsel for Grumman Data. He was assigned by Grumman Data to serve as in-house Legal Counsel for GSSC specifically with respect to the Prior Action. As Legal Counsel for Grumman Data, Killian was bound to represent its interests.[9]

The deposition of Richard Geib indicates that after the jury retired to deliberate in the Prior Action, a telephone conference was convened on the GSSC side to discuss a possible settlement proposal. (An offer was ultimately made and rejected.) Participating in that telephone conference were Killian, Geib, Thomas Genovese, General Counsel of Grumman Corporation, Mulderig and Stephen Dely, a senior officer of Grumman Corporation. None of those individuals was employed by GSSC.

Grumman Data's position depends upon the fiction that employees of Grumman Corporation or Grumman Data who carry out certain duties at GSSC at the behest of their superiors do so solely as representatives of GSSC. Defendant wants it both ways—to protect its interests by having its employees supervise the decisionmaking responsibilities of its subsidiary, while appearing to keep itself above the fray. The Court rejects such maneuvering.

Based upon the affidavits, depositions and other record evidence on file, this Court concludes that Grumman Data had a financial stake in the outcome of, and substantially participated in and controlled, the defense of GSSC before and during the trial of the Prior Action.

## CONCLUSION

Grumman Data is vicariously liable, as a matter of federal copyright law, for the copyright infringement of GSSC. Judgment was entered against GSSC on that claim in the amount of $33,777,744. Because Grumman Data had a financial stake in the outcome of the Prior Action, and participated in and controlled GSSC's defense thereof, Grumman Data is bound by the judgment of the jury in favor of Data General and against GSSC on Data General's copyright infringement claim. The motion of Data General for summary judgment on Count I will therefore be allowed.

## ORDER

For the foregoing reasons, it is hereby Ordered that the motion of Data General Corporation for summary judgment with respect to Count I of its Complaint against Grumman Data Systems Corporation is ALLOWED.

So Ordered.

---

reason to believe otherwise, assume Katz was referring to the defendant, GSSC. But he continued:

> I'd like to introduce you to two other people *from Grumman.* One is Mr. Joseph Mulderig, who is the president *of GSSC, the subsidiary that's being sued here,* and the other is Mr. William O'Neil, who's the director of field operations for GSSC [emphasis supplied].

Why the distinction between Grumman and GSSC if Katz was using the term "Grumman" to refer to GSSC?

**9.** All bills with respect to the Prior Action (from outside counsel and for reimbursement of expert and fact witnesses) were reviewed and approved by Messrs. Killian, Geib or Genovese.