**Morris ROSENTHAL, Plaintiff**

v.

**MPC COMPUTERS, LLC, et al, Defendants.**

**C.A. No. 06–30060–MAP.**

United States District Court, D. Massachusetts.

July 2, 2007.

Michael G. Andrews, Irwin B. Schwartz, Business Litigation Associates, Boston, MA, for Gores Technology Group, LLC.

Kurt E. Bratten, Gesmer Updegrove LLP, Boston, MA, for MPC Computers, LLC.

Zick Rubin, Lori B. Silver, The Law Office of Zick Rubin, Newton, MA, for Morris Rosenthal.

### MEMORANDUM AND ORDER RE: REPORT AND RECOMMENDATION WITH REGARD TO MOTION TO DISMISS OF CO–DEFENDANT GORES (Dkt. Nos. 9 & 19)

PONSOR, District Judge.

Plaintiff, the author of computer maintenance materials, wrote a work entitled "PC Diagnostics and Repair Flowchart," which he published on his website in December of 2002. In this complaint, he contends that Defendant MPC Computers, LLC ("MPC"), under the supervision and management of co-defendant Gores Technology Group, LLC ("GTG"), copied the substance of his work, including a large portion of it *verbatim.*

Plaintiff charges both Defendants with federal copyright infringement, 17 U.S.C. § 501, violation of the Digital Millennium Copyright Act ("DMCA"), codified at 17 U.S.C. § 1202(b), violation of the Lanham Act, 15 U.S.C. § 1125(a), common law unfair competition, and violation of the Massachusetts Consumer Protection Statute, Mass. Gen. Laws ch. 93A.

Defendant MPC has filed an answer to Plaintiffs complaint, admitting that it published the materials identified in the complaint without authorization. GTG filed a Motion to Dismiss, both for failure to state a claim and for lack of personal jurisdiction (Dkt. No. 9).

The Motion to Dismiss was referred to Chief Magistrate Judge Kenneth P. Neiman for a report and recommendation. On March 14, 2007, Magistrate Judge Neiman issued his Report and Recommendation, to the effect that Defendant's motion should be denied. GTG has filed an objection to the Report and Recommendation.[1]

Upon *de novo* review of the arguments related to Defendant's Motion to Dismiss, and of Judge Neiman's Report and Recommendation, the court will adopt the Report and Recommendation and deny the Motion to Dismiss.

GTG's objection to the Magistrate Judge's finding that this court may properly exercise personal jurisdiction over this defendant breaks into two segments.

First, GTG alleges that the complaint lacks any adequate allegations that GTG caused tortious injury in this Commonwealth by an act or omission outside the Commonwealth, and that GTG regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth, as required by Mass. Gen. Laws ch. 223A, § 3(d).

This argument was quickly and correctly disposed of by the Magistrate Judge. The complaint, fairly construed, does allege

---

1. Although the Motion to Dismiss was denied, Plaintiff has also filed an objection (Dkt. No. 22), contending that Judge Neiman's recommendation that long-arm jurisdiction did not exist under Mass. Gen. Laws ch. 223A, § 3(a) was incorrect. It is not necessary for the court to rule on this objection, since Judge Neiman was clearly correct that jurisdiction under the long-arm statute exists under an alternate provision, Mass. Gen. Laws ch. 223A, § 3(d). This court expresses no opinion with regard to Judge Neiman's discussion of Mass. Gen. Laws ch. 223A, § 3(a).

that GTG through its active supervision and management of MPC did cause tortious injury to Plaintiff in the Commonwealth. Moreover, the several contacts reviewed by the Magistrate Judge at 20–21 of the Report and Recommendation (Dkt. No. 19) demonstrate, at least at this stage, that Defendant has at a minimum engaged "in a persistent course of conduct" in the Commonwealth. Mass. Gen. Laws ch. 223A, § 3(d).

The second portion of Defendant's objection is that it was not GTG, but a closely-related corporation, GTG PC Holdings, LLC (the supposed actual owner of MPC during the relevant period) that was the true malefactor here. This attempt to hide the penny by shifting the corporate walnut shells has been criticized by the Massachusetts Supreme Judicial Court in *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619, 233 N.E.2d 748 (1968). In any event, the allegations in the complaint on their face are sufficient to warrant denial of the motion to dismiss directed at the current Defendant.[2]

Defendant GTG also objects, substantively, to the Magistrate Judge's recommendation that the Motion to Dismiss, based upon a failure to state a claim, be denied. Defendant complains only that the "weakest of allegations" support Plaintiff's vicarious copyright infringement claim. Weak these allegations may be, at least in Defendant's eyes, but they are clearly adequate to survive a threshold motion to dismiss.

Defendant's argument with regard to the vicarious DMCA violation was not addressed in Defendant's memorandum in support of its Motion to Dismiss. The

sketchy summary of the oral comments on this point presented to the Magistrate Judge are insufficient to provide a basis for this court to reject the Magistrate Judge's recommendation.

Defendant's objection to the denial of the Motion to Dismiss on the remaining counts may be addressed during discovery and, if appropriate, via a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 once discovery closes.

For the foregoing reasons, upon *de novo* review, the Report and Recommendation of Chief Magistrate Judge Neiman dated March 14, 2007 is hereby ADOPTED. Defendant's Motion to Dismiss (Dkt. No. 9) is hereby DENIED. Co-defendant GTG will have twenty days from receipt of this memorandum to file its answer. The case will thereafter be referred to Chief Magistrate Judge Neiman for a pretrial scheduling conference.

It is So Ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO GORES TECHNOLOGY GROUP LLC'S MOTION TO DISMISS THE AMENDED COMPLAINT (Document No. 9)*

NEIMAN, Chief United States Magistrate Judge.

Springfield author Morris Rosenthal ("Plaintiff") alleges that MPC Computers, LLC ("MPC") plagiarized his copyrighted guide to power supply troubleshooting for personal computers. Plaintiff has also sued Gores Technology Group, LLC ("GTG"), a California company that allegedly "supervised and managed MPC at the inception of and during the continuation of the infringement." (Amended Complaint

---

**2.** Alternatively, Plaintiff in his opposition to Defendant's objections (Dkt. No. 23) offered at n. 2 to seek leave to amend the complaint to add GTG PC Holdings, LLC as a co-defendant. To avoid possible problems as the case unfolds, it would appear wise for Plaintiff to take this step.

¶ 4.) GTG has moved to dismiss the complaint on personal jurisdiction and merits grounds pursuant to Fed.R.Civ.P. 12(b)(2) and (6). MPC, for its part, has answered the complaint and admitted several of Plaintiff's main allegations.

GTG's motion to dismiss has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons which follow, the court will recommend that GTG's motion to dismiss be denied.

## I. BACKGROUND

The following facts are taken from the complaint and, for personal jurisdiction purposes, several other documents, including an affidavit of Brent Bradley ("Bradley"), GTG's Vice President and Fund General Counsel. *See Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 134 (1st Cir.2006) (under the typical *prima facie* standard for personal jurisdiction, the court must "take those specific facts affirmatively alleged as true and construe them in a light most congenial to the plaintiff's jurisdictional claim ... [and then] add to the mix facts put forward by the defendants, to the extent that they are uncontradicted"); *Callahan v. Harvest Bd. Int'l, Inc.*, 138 F.Supp.2d 147, 152–53 (D.Mass.2001) (unlike with a Rule 12(b)(6) motion, "[t]he consideration of materials outside the complaint is appropriate in ruling on a motion to dismiss for lack of personal jurisdiction") (citing cases). Further facts with regard to the personal jurisdiction issue are addressed below.

MPC is a Delaware company headquartered in Idaho; it is in the business of manufacturing and selling personal computers. (Amended Complaint ¶ 3.) GTG is a Delaware company headquartered in California. (*Id.* ¶ 4.) Plaintiff alleges that, between 2001 and July of 2005, GTG "actively supervised and controlled MPC." (*Id.* ¶ 37.)

Plaintiff is the author of computer maintenance materials and resides in Massachusetts. (*Id.* ¶ 2.) He authored a work entitled "PC Diagnostics and Repair Flow Chart" (the "Work"), which he published on his web site in December of 2002. (*Id.* ¶¶ 10–11.) In 2003, MPC published "KnowledgeBase General Power Supply Troubleshooting" on its web site ("the MPC Solution"), which is alleged to have infringed on Plaintiff's Work. (*Id.* ¶¶ 18–23.) According to Plaintiff, MPC not only copied the original ideas, techniques, and troubleshooting sequences contained in his Work, but also copied a large portion of the Work verbatim. (*Id.* ¶ 20.)

In October of 2005, Plaintiff requested MPC to remove the MPC Solution from its web site. (*Id.* ¶ 52.) MPC immediately complied. (*Id.* ¶¶ 33, 53.) Thereafter, in February of 2006, Plaintiff registered his Work in the U.S. Copyright Office (*id.*, Ex. 1) and then instituted this action.

Each of the five counts in Plaintiff's complaint is asserted against both MPC and GTG. Count One alleges copyright infringement in violation of 17 U.S.C. § 501. Count Two alleges a violation of the 1998 Digital Millennium Copyright Act ("DMCA"), codified at 17 U.S.C. § 1202(b). Count Three alleges a violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Count Four alleges common law unfair competition. Count Five alleges a violation of sections 9 and 11 of Massachusetts's consumer protection statute, Mass. Gen. L. ch. 93A ("chapter 93A").

GTG filed its motion to dismiss on July 3, 2006. For its part, MPC filed an answer to Plaintiff's complaint one week later; although MPC denies liability with respect to each count (and raises a number of affirmative defenses), it admits "that it published the material identified in the Complaint, to which the copyright is

owned by the Plaintiff, without authorization" and "provided no credit or attribution to Plaintiff on its website" (MPC's Answer ¶¶ 1, 20, 26.) MPC's counsel thereafter told Plaintiff's counsel "that MPC is likely to become insolvent in the near future." (Document No. 15 ("Pl.'s Brief") at 6, Exs. G, I.)

As to GTG, Plaintiff alleges the following in his complaint:

### [GTG]'s Active Supervision and Control of MPC

34. On or about May 1, 2001, [GTG] acquired the PC Division of Micron Electronics. While under [GTG]'s supervision and control, the PC Division of Micron Electronics was organized as MPC.

35. At the time of [GTG]'s acquisition of MPC, [GTG] described itself as "a privately held international acquisition and management firm that pursues an aggressive strategy of acquiring promising high-technology organizations and managing them for growth and profitability."

36. At the time of [GTG]'s acquisition of MPC, Alec Gores, the founder and chairman of [GTG], announced that "we look forward to providing the leadership and resources required to create and sustain a dynamic and market leading enterprise."

37. On information and belief, between 2001 and July 2005, [GTG] actively supervised and controlled MPC.

38. On information and belief, MPC's unlicensed copying and reproduction of the Work was motivated by an effort led by [GTG] to make MPC more profitable.

39. [GTG] had the right and ability to supervise MPC's unlicensed copying, reproduction, and display of the Work.

40. [GTG] had an obvious and direct financial interest in MPC's unlicensed copying, reproduction, and display of the Work.

41. On information and belief, [GTG] assumed an active supervisory role in the management of MPC, including the supervision of MPC's unlicensed exploitation of the Work.

(Amended Complaint ¶¶ 34–41.)

For his part, Bradley, GTG's Executive Vice President and Fund General Counsel, avers, in pertinent part, as follows in an affidavit:

2. GTG is a private investment advisor, which also provides oversight and management support to companies in which its principals and outside investors own some interest and receive management fees from those companies for GTG's services.

3. GTG has never owned any interest in MPC Computers, LLC ("MPC"). From April 30, 2001 to July 25, 2005, MPC was wholly owned by GTG PC Holdings, LLC ("Holdings"). In July 2005, MPC was acquired by Hyperspace Communications, a publicly traded company unaffiliated with GTG.

4. From April of 2001 through August of 2003, the MPC investment was managed by Gores Technology Group, a California corporation. In September of 2003, GTG took over responsibility for those functions until July 2005, at which time MPC was purchased by Hyperspace Communications.

5. GTG does not transact business in Massachusetts. Occasionally, however, GTG's principals and outside investors acquire interests in companies that may transact business in Massachusetts, which companies may receive management support from GTG and pay GTG management fees for such services. GTG derives no substantial revenues

from the sale of goods or services in Massachusetts.

6. Neither GTG nor Holdings has ever communicated with [Plaintiff] with respect to any matter in Massachusetts or elsewhere.

7. Neither GTG nor Holdings has ever transacted business with MPC Computers, LLC in Massachusetts.

8. Neither GTG nor Holdings has ever been involved in the publication of "KnowledgeBase General Power Supply Troubleshooting" (the "MPC Solution") in Massachusetts or elsewhere.

(Document No. 11 ("Bradley Aff.") ¶¶ 2–8.)

## II. DISCUSSION

GTG's motion to dismiss makes two arguments, first, that this court lacks personal jurisdiction over it and, second, that the complaint should be dismissed on its merits. Because many of the issues revolve around the doctrine of "vicarious copyright infringement," an essential ingredient of GTG's merits-based argument, the court will follow Plaintiff's lead and address GTG's arguments in reverse order. Thus, it will first discuss the merits portion of GTG's motion—*i.e.*, whether the complaint fails to state vicarious copyright infringement (and other) claims upon which relief may be granted, *see* Fed. R.Civ.P. 12(b)(6)—and then turn to the "personal jurisdiction" argument, *see* Fed. R.Civ.P. 12(b)(2). In the end, the court will conclude that neither argument warrants dismissal of Plaintiff's complaint.[3]

### A. Merits

In moving to dismiss Plaintiff's complaint on its merits pursuant to Rule 12(b)(6), GTG makes two essential arguments. The first argument targets the copyright claims in Counts One and Two and focuses on the issue of "vicarious copyright infringement." The second targets the remaining Lanham Act, unfair competition and chapter 93A claims in Counts Three, Four and Five and focuses on the issue of "veil piercing." The court will address each argument in turn.

1. *Vicarious Infringement and the Copyright Claims (Counts One and Two)*

The parties agree that there are "three doctrines of copyright liability: direct copyright infringement, contributory copyright infringement, and vicarious copyright infringement." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir.2004). They also agree that GTG is only alleged to be *vicariously* liable for MPC's infringement. (See Amended Complaint ¶¶ 59, 64.)

■ Although the First Circuit itself has never discussed vicarious copyright infringement, at least two judges in this district have. *See Data General Corp. v. Grumman Data Sys. Corp.*, 886 F.Supp. 927, 930 (D.Mass.1994) (Gorton, J.); *Polygram Int'l Publ'g, Inc. v. Nevada/Tig, Inc.*, 855 F.Supp. 1314, 1324 (D.Mass.1994) (Keeton, J.). In essence, both District Judge Nathaniel M. Gorton and District Judge Robert E. Keeton adopted from the Second Circuit "what has become the ac-

---

3. At the outset, the court notes that it, like Plaintiff, has referred to the moving defendant as "GTG" which, as indicated, is an abbreviation for "Gores Technology Group, LLC." In some contrast, Bradley's affidavit states that an entity called "Gores Technology Group" (without an "LLC" designation) managed MPC between April of 2001 and August of 2003 and that "Gores Technology Group, LLC" managed MPC between September of 2003 and July of 2005. (Bradley Aff. ¶¶ 1, 4.) As Plaintiff points out, however, there has been no suggestion that this apparent change in legal status has any bearing on the present motion to dismiss.

knowledged standard for a finding of vicarious liability in the context of copyright infringement:

> When the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials—even in the absence of actual knowledge that the copyright monopoly is being impaired—the purposes of copyright law may be best effectuated by the imposition of liability upon the beneficiary of that exploitation."

*Polygram,* 855 F.Supp. at 1324 (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir.1963)). *Accord Data General,* 886 F.Supp. at 930 (citing *Shapiro, Bernstein* and similar decisions from the Third, Eighth and Eleventh Circuits as well as the District of Rhode Island and the Northern District of Illinois). Having reviewed these decisions in some detail, this court agrees—as do the parties—that a defendant "corporation may be held vicariously liable under federal copyright law for the infringing acts of [another] if the [defendant] has: 1) the right and ability to supervise the infringing activity of the [other] and 2) an obvious and direct financial interest in the exploitation of the copyrighted materials." *Data General,* 886 F.Supp. at 930. Together, these two elements of vicarious copyright infringement serve important purposes: "a court can evaluate the defendant's ability to spread losses and police conduct within the enterprise, as well as the underlying fairness of holding the defendant liable." *Polygram,* 855 F.Supp. at 1326.

■ In the court's view, Plaintiff has adequately alleged the two necessary elements for vicarious copyright infringement. First, Plaintiff has sufficiently pled that GTG "had the right and ability to supervise MPC's unlicensed copying, reproduction, and display of the Work."

(Amended Complaint ¶ 39. See also *id.* ¶¶ 37, 59, 64.) Second, Plaintiff has sufficiently pled that GTG "had an obvious and direct financial interest in MPC's unlicensed copying, reproduction, and display of the Work." (*Id.* ¶ 40. See also *id.* ¶¶ 38, 59, 64.) This is all that is needed under the federal rules' relatively modest pleading requirements. *See Rivera v. Rhode Island,* 402 F.3d 27, 33 (1st Cir.2005) (under the "lenient" notice pleading requirements, "the complaint only needs to include 'a short and plan statement of the claims showing that the pleader is entitled to relief' ") (quoting Fed.R.Civ.P. 8(a)(2)).

To be sure, GTG posits that Plaintiff's vicarious copyright infringement allegations are nothing more than "vague or conclusory" statements. But that is simply not the case. Unlike the *pro se* complainant in *Parker v. Google, Inc.,* 422 F.Supp.2d 492, 499–500 (E.D.Pa.2006)— the only Rule 12(b)(6) decision GTG cites in this regard—Plaintiff has not failed to "make[ ] ... specific allegations regarding what the infringing conduct is"; or to "refer to any specific registered works"; or to "allege specific conduct by a third party which [the defendant] may have had the right and ability to supervise." On the contrary, Plaintiff's allegations are quite precise in these regards. (See, *e.g.,* Amended Complaint ¶¶ 18–33 (detailing alleged infringement by MPC), 10–17 (describing Plaintiff's copyrighted work) and 34–41 (outlining GTG's supervision and control of MPC).) And, GTG's argument to the contrary, it is of no moment that several of Plaintiff's allegations are made only "on information and belief." *See Langadinos v. Am. Airlines, Inc.,* 199 F.3d 68, 73 (1st Cir.2000) ("[A] plaintiff can make allegations *either* on the basis of personal knowledge or on information and belief") (citations and footnote omitted; emphasis in original). In sum, the court deems Plaintiff's allegations of vicarious

copyright infringement sufficiently pled to survive GTG's merits-based argument.

■ Before moving on, the court wishes to add one final note with respect to Count Two, the DMCA cause of action. Even though the DMCA is of relatively recent vintage, both parties assume that vicarious infringement liability is also available under that statute. The case law supports that assumption. *See Gordon v. Nextel Communications,* 345 F.3d 922, 925–26 (6th Cir.2003) (applying Second Circuit's two-prong vicarious copyright infringement test to DMCA dispute). *See also* Lance C. McCardle, *Despite Congress's Good Intentions, The DMCA's Anti–Circumvention Provisions Produce A Bad Result—A Means to Create Monopolies,* 50 Loy. L.Rev. 997, 1026 n. 177 (Winter 2004) ("The text of the DMCA suggests that Congress did not intend to 'enlarge or diminish vicarious or contributory liability for copyright infringement.' ") (quoting 17 U.S.C. § 1201(c)(2) and citing cases). Accordingly, the court will recommend that neither Count One nor Count Two be dismissed on its merits.

### 2. *Veil–Piercing and the Remaining Claims (Counts Three, Four and Five)*

GTG next argues that Counts Three, Four and Five should be dismissed on their merits for a different reason, one involving "veil-piercing." First, GTG asserts that parent corporations are generally not liable for Lanham Act, unfair competition, or chapter 93A violations committed by their subsidiaries. *See, e.g., Birbara v. Locke,* 99 F.3d 1233, 1239 (1st Cir.1996) (torts in general); *Symantec Corp. v. CD Micro, Inc.,* 286 F.Supp.2d 1265, 1275 (D.Or.2003) (Lanham Act claim); *Lily Transp. Corp. v. Royal Inst. Servs., Inc.,* 64 Mass.App.Ct. 179, 832 N.E.2d 666, 674 (2005) (chapter 93A

claim). Moreover, GTG asserts. the corporate veil can be pierced only in "rare" situations so as to avoid "gross inequity," *Birbara,* 99 F.3d at 1239 (citing cases), taking into account such factors as "insufficient capitalization, nonobservance of corporate formalities, failure to pay dividends, insolvency at the time of the litigated transaction, siphoning off corporate funds, absence of functioning officers besides the dominant shareholders, absence of corporate records, use of the corporation to advance the interests of the dominant shareholders, and use of the corporation in promoting fraud." *Id.* at 1240 n. 7 (citation omitted). Because none of these factors is present here, GTG argues, MPC's corporate veil ought not be pierced so as to find GTG liable for its infringement. Accordingly, GTG argues, Counts Three through Five should be dismissed on their merits.

Plaintiff ignores Defendant's veil-piercing argument. This court, too, deems the argument a red-herring. Put simply, there exists no evidence, let alone any allegation, that MPC is a "subsidiary" of GTG or that GTG is MPC's "parent"; ergo, there appears to be no "veil" to "pierce." Indeed, GTG appears to concede these points. (See Document No. 10) ("GTG's Brief") at 10 n. 5 ("As set forth in the Affidavit of Brent Bradley, GTG is not MPC's parent company or even a shareholder in MPC.... Moreover, ... the Amended Complaint fails to include any allegations whatsoever upon which the Court could pierce the corporate veil as to anyone.").

Nonetheless, GTG contends within its veil-piercing argument that Plaintiff's allegations that it is liable for MPC's violations of the Lanham Act, unfair competition and violations of chapter 93A, (Amended Complaint ¶¶ 72, 76 and 83), are legally insufficient. According to GTG,

Plaintiff's allegations are "bland" assertions which "ignore the corporate form and are patently insufficient to raise a claim involving an attribution of liability to GTG." (GTG's Brief at 11–12 (citing, *inter alia, Noonan v. Winston Co.,* 135 F.3d 85, 94 (1st Cir.1998); *Omni–Wave Electronics Corp. v. Marshall Indus.,* 127 F.R.D. 644, 647 (D.Mass.1989)).) Once again, the court disagrees, at least for present purposes.

■ Plaintiff's complaint does more than cast GTG as an "unattributable" defendant. Rather, like the infringement claims, Plaintiff's Lanham Act, unfair competition and chapter 93A causes of action specifically assert that GTG "actively supervised MPC's exploitation of the Work." (Amended Complaint ¶¶ 72, 76 and 83. See *also id.* ¶ 37 (GTG "actively supervised and controlled MPC"), ¶ 41 (GTG "assumed an active supervisory role in the management of MPC, including the supervision of MPC's unlicensed exploitation of the Work"), and ¶¶ 35 and 36 (GTG's chairman announcing that GTG "pursues an aggressive strategy of acquiring and managing" high-technology companies and that he looked forward to providing MPC "leadership and resources").) In the court's view, these assertions, taken together with the complaint's other allegations, sufficiently state Lanham Act, unfair competition, and chapter 93A claims upon which relief may be granted. *See Rivera,*

402 F.3d at 33. Accordingly, there appears to be no compelling argument by GTG, veil-piercing or otherwise, to dismiss Counts Three through Five on their merits.[4]

### B.  *Personal Jurisdiction*

GTG also argues that the court lacks personal jurisdiction over it and that the complaint should be dismissed pursuant to Rule 12(b)(2). Although the question is close, the court again agrees with Plaintiff, not GTG.[5]

### 1.  *Legal Standards*

■ "When embarking upon the fact-sensitive inquiry of whether a forum may assert personal jurisdiction over a defendant, the court's task is not a rote, mechanical exercise." *Sawtelle v. Farrell,* 70 F.3d 1381, 1388 (1st Cir.1995) (citations and internal quotation marks omitted). *See also Good Hope Indus., Inc. v. Ryder Scott Co.,* 378 Mass. 1, 389 N.E.2d 76, 78 (1979). Rather, the court must pursue a two-part inquiry: (1) whether the plaintiff demonstrates that jurisdiction is authorized by the forum's long-arm statute, and, if authorized, (2) whether such jurisdiction comports with the Due Process Clause of the United States Constitution. *See Sawtelle,* 70 F.3d at 1387; *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138,

---

**4.** This is not to say, as *Plaintiff* argues, that the same "vicarious liability" doctrine under which his infringement claims have been brought ought to be applied to his Lanham Act, unfair competition, and chapter 93A causes of action.  (See Plaintiff's Brief at 11–12.) Plaintiff has cited no case law, and this court has found none, for such a novel proposition. *But see Banff Ltd. v. Limited, Inc.,* 869 F.Supp. 1103, 1111 (S.D.N.Y.1994) (discussing, in *dicta,* whether vicarious copyright infringement standards should be applied to Lanham Act claim).  Rather, this court simply believes, under the "lenient" concept of no-

tice pleading, *Rivera,* 402 F.3d at 33, that Plaintiff has sufficiently alleged that GTG is liable for unfair competition as well as for violations of the Lanham Act and chapter 93A.

**5.** In a footnote, GTG suggests that "dismissal is also appropriate under Fed.R.Civ.P. 12(b)(3)" because "[f]ailure of jurisdiction negates venue." Since GTG does not develop this argument further, the court has not considered it.

144 (1st Cir.1995). The court will separately address each part of this inquiry.

## 2. Long–Arm Statute

As for the statutory analysis, the law of the forum state applies. *Sawtelle,* 70 F.3d at 1387. In relevant part, the Massachusetts long-arm statute (hereinafter "section 3") provides as follows:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> (a) transacting any business in this commonwealth; [or]
>
> .    .    .    .    .
>
> ... (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth....

Mass. Gen. L. ch. 223A, § 3(a), (d). Thus, the question is whether Plaintiff's causes of action against GTG are ones arising from either (1) its "transacting any business in" Massachusetts (section 3(a)) or (2) its "causing tortious injury in [Massachusetts] by an act or omission outside" Massachusetts, but then only if GTG "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in" Massachusetts. (section 3(d)). The court will consider each aspect of the long-arm statute. In the end, the court will conclude that personal jurisdiction over GTG is not authorized by section 3(a), but is by section 3(d).

### a. Section 3(a)

■ The court recognizes that section 3(a) is to be construed broadly. *See Bond Leather Co. v. Q.T. Shoe Mfg. Co.,* 764 F.2d 928, 931 (1st Cir.1985); *JMTR Enters., L.L.C. v. Duchin,* 42 F.Supp.2d 87, 94 (D.Mass.1999). Indeed, a defendant may be deemed to have transacted business in Massachusetts under section 3(a) without being physically present in the state. *See Workgroup Tech. Corp. v. MGM Grand Hotel, L.L.C.,* 246 F.Supp.2d 102, 109–10 (D.Mass.2003) (citation omitted). *See also Ross v. Ross,* 371 Mass. 439, 358 N.E.2d 437, 439 (1976) (noting that the language of section 3(a) "is general and applies to any purposeful acts by an individual, whether personal, private or commercial"). Moreover, as the First Circuit has repeatedly instructed, section 3(a) may be satisfied even when the defendant's forum contacts are quite sparse, for example, sending a single telex to Massachusetts. *See Ealing Corp. v. Harrods, Ltd.,* 790 F.2d 978, 983 (1st Cir.1986).

In the instant case, however, it does not appear that GTG had any contact with Plaintiff in Massachusetts—let alone anywhere else—as to satisfy section 3(a). At first blush, therefore, it appears that Plaintiff has not demonstrated that personal jurisdiction over GTG is authorized by section 3(a), *compare, e.g., Bond Leather,* 764 F.2d at 932 (mailing four letters to and receiving a telephone call from plaintiff in Massachusetts satisfied section 3(a)); *Hahn v. Vermont Law Sch.,* 698 F.2d 48, 50 (1st Cir.1983) (mailing application information and acceptance letter to plaintiff in Massachusetts satisfied section 3(a)), and the court is prepared to so recommend.

Plaintiff, however, asserts that *MPC's* contacts with Massachusetts may be imputed to GTG for jurisdictional purposes. According to Plaintiff, any court confronted with a personal jurisdictional inquiry

must take into account the purposes of the underlying federal law, here, vicarious copyright infringement. The purposes of that concept, Plaintiff continues, are important: "a court can evaluate the defendant's ability to spread losses and police conduct within the enterprise, as well as the underlying fairness of holding the defendant liable." *Polygram*, 855 F.Supp. at 1326. In light of these purposes, Plaintiff concludes, the court should "deem MPC to be GTG's agent for jurisdictional purposes" and "impute MPC's contacts with Massachusetts to GTG." (Plaintiff's Brief at 14.) As support, Plaintiff variously cites to three cases: *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 45, 56–57 (1st Cir.2002), *United Electrical, Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1091–92 (1st Cir.1992), and *Polygram*, 855 F.Supp. at 1325.

There are several problems with Plaintiff's analysis, creative as it is. For one thing, neither of the personal jurisdiction cases he cites, *Daynard* and *United Electrical*, deals with vicarious copyright infringement. *See, e.g., Daynard, supra* (discussing imputation of liability for personal jurisdiction purposes in dispute over legal fees); *United Electrical*, 960 F.2d at 1092 (discussing personal jurisdiction in the context of dispute involving workers' claims to benefits pursuant to Employee Retirement Income Security Act of 1974). Conversely, the single vicarious copyright infringement case Plaintiff cites, *Polygram*, does not concern personal jurisdiction. Needless to say, this court is reluctant to plow new legal ground—at the intersection of vicarious copyright infringement and personal jurisdiction—without

the benefit of controlling, or at least persuasive, caselaw.

That said, Plaintiff claimed at oral argument to have unearthed a case that favorably yoked vicarious copyright infringement with personal jurisdiction, *Stewart v. Adidas A.G.*, 1997 WL 218431 (S.D.N.Y. Apr.30, 1997), an unreported decision which this court finds unpersuasive, if not distinguishable. First, the *Stewart* court provides no cited support for the key words upon which Plaintiff relies, *i.e.*, that "[i]nsofar as [a defendant] is vicariously or contributorily responsible for [another's infringing] sales, it is subject to personal jurisdiction." *Id.*, at *6. Second, the quoted words are arguably *dicta;* the *Stewart* court, without reference to vicarious liability, had already exercised personal jurisdiction over the defendant pursuant to another analysis. *See id.* at **4–6. Third, the *Stewart* court's comments refer to CPLR § 302(a)(2), New York's analogue to section 3(c) of the Massachusetts statute, a long-arm provision not at issue here. *Id.* at **5–6.[6]

To be sure, there are two other district court decisions, not cited by Plaintiff, which address the extent to which vicarious infringement liability might coalesce with personal jurisdiction. *See Sefton v. Jew*, 201 F.Supp.2d 730 (W.D.Tex.2001), and *MGM Studios, Inc. v. Grokster, Ltd.*, 243 F.Supp.2d 1073 (C.D.Cal.2003). Both of those decisions, however, run counter to Plaintiff's position.

The court in *Sefton* held that "[a]lthough a vicarious theory may be a basis for *liability* against [a defendant], it is *not* a basis for asserting *jurisdiction* over him."

6. Another opinion cited by Plaintiff at oral argument, *Data General*, is similarly distinguishable. Although Judge Gorton noted therein that he had denied the defendant's personal jurisdiction-based motion to dismiss, *see id.*, 886 F.Supp. at 929, he never addressed the level of overlap, if any, between personal jurisdiction and vicarious copyright infringement.

*Id.* at 743 n. 8 (emphasis added). In so holding, the court cited to one of its previous decisions which, in turn, discussed the general "difference between the rules governing personal jurisdiction and the rules governing substantive tort liability" as they pertain to corporate principals and agents. *Saktides v. Cooper,* 742 F.Supp. 382, 386 n. 4 (W.D.Tex.1990) (citing *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902 (2d Cir.1981); *Bulova Watch Co. v. K. Hattori & Co.,* 508 F.Supp. 1322, 1348 (E.D.N.Y.1981); and *McClelland v. Watling Ladder Co.,* 729 F.Supp. 1316, 1319 (W.D.Okla.1990)). That distinction makes sense here as applied to section 3(a); thus, there appears to be a fundamental difference between the elements of vicarious copyright infringement—"control" and "benefit," *Polygram,* 855 F.Supp. at 1324—and the question of whether a defendant, whether directly or through an agent, "transact[ed] any business in this commonwealth," Mass. Gen. L. ch. 223A, § 3(a).

The second decision, *MGM Studios,* also runs counter to Plaintiff's position. There, the court refused to establish personal jurisdiction over an out-of-state entity simply because the entity was charged with vicarious copyright infringement. *Id.,* 243 F.Supp.2d at 1091. Noting that "vicarious liability 'is an outgrowth of *respondeat superior*'" and that "claims for vicarious copyright infringement extend beyond the employer/employee context," the court observed that such claims "are limited to those cases where the defendant 'has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'" *Id.* (quoting *A & M Records v. Napster, Inc.,* 239 F.3d 1004, 1022 (9th Cir.2001)) (further citations and internal quotation marks omitted). Since "neither an intent to infringe nor knowledge of direct infringement is an element of this tort," the court continued, "it

is somewhat doubtful that the alleged acts comprising vicarious liability are sufficient to satisfy" the necessary personal jurisdiction test. *Id.* (citing, *inter alia, Shapiro, Bernstein,* 316 F.2d at 304).

Put bluntly, the caselaw appears to reject the essence of Plaintiff's section 3(a) argument that personal jurisdiction over GTG can be established simply by a sufficient pleading of vicarious copyright infringement. In accord with that approach, the court believes that personal jurisdiction over GTG does not exist pursuant to Mass. Gen. L. ch. 223A, § 3(a). *Cf. LaForest v. Ameriquest Mort. Co.,* 383 F.Supp.2d 278 (D.Mass.2005) (refusing to find personal jurisdiction over out-of-state defendant whose sole connection to the forum was through employer-defendant).

### b. *Section 3(d)*

■ Plaintiff, however, fares far better with respect to section 3(d), a provision that does not require imputation of MPC's actions to GTG. Indeed, for purposes of its motion to dismiss, GTG does not dispute that, at a minimum, the threshold requirement of section 3(d)—"that the defendant's out-of-state act caused the plaintiff's in-state harm," *Merced v. JLG Indus., Inc.,* 170 F.Supp.2d 65, 71 (D.Mass.2001)—has been met. GTG allegedly supervised and controlled, outside Massachusetts, an entity, MPC, that infringed Plaintiff's copyright within the Commonwealth. *Cf. Venture Tape Corp. v. McGills Glass Warehouse,* 292 F.Supp.2d 230, 232 (D.Mass.2003) ("[I]n trademark infringement cases, the injury is said to have occurred where the trademark owner is located.") (citing *Hasbro, Inc. v. Clue Computing, Inc.,* 994 F.Supp. 34, 39 (D.Mass.1997)). GTG disputes, however, that Plaintiff has satisfied the second requirement of section 3(d). Thus, GTG asserts, the complaint is "devoid" of any

allegation that it (1) engaged or solicited business in Massachusetts, (2) engaged in any other persistent course of conduct in Massachusetts, or (3) derived substantial revenue from goods used or consumed in Massachusetts. Mass. Gen. L. ch. 223A, § 3(d).

In the court's opinion, Plaintiff has come forward with sufficient evidence on at least one, if nor all, of these prongs, *see Merced*, 170 F.Supp.2d at 71 ("Because the second requirement of § 3(d) is disjunctive, the plaintiff need only satisfy one of its prongs.") (citing *Noonan*, 135 F.3d at 92), evidence which GTG has not challenged in any material way. Specifically, Plaintiff has proffered undisputed evidence that, throughout the period in question, GTG had often played an active role in the Massachusetts economy.

For example, it is undisputed that in May of 2000 Cabletron Systems, Inc. announced its sale to GTG of its Digital Networks Products Group, headquartered in Andover, Massachusetts. (See Plaintiff's Brief, Ex. J.) Five months later, in October of 2000, GTG announced its acquisition of The Learning Company ("TLC"), a developer of educational technology tools based in Cambridge, Massachusetts, and named its own president, Vance Diggins, as interim president of TLC. (*Id.*, Ex. K.) Then in September of 2001, GTG, having turned TLC from a losing enterprise into a profitable company (see *id.*, Ex. L), sold the education assets of TLC to Riverdeep Group plc ("Riverdeep"), a software company partially headquartered in Cambridge, Massachusetts (*id.*, Ex. M). As a result, GTG became a shareholder in Riverdeep. (*Id.*)

It is also undisputed that, in December of 2004, GTG purchased from Boston Millenia Partners, an equity finance company based in Boston, a video collaboration solutions company, via a merger transaction with GTG's Wire One Technology unit. (*Id.*, Exs. N, O.) And in January of 2005, Concord Communications, Inc., a company headquartered in Marlboro, Massachusetts, acquired Aprisma Management Technologies, Inc., a business software management company, from GTG. (*Id.*, Ex P.)

There is also no dispute that, in or about March of 2006, GTG and Tennenbaum Capital Partners, LLC, acquired Enterasys Networks, Inc., a networking company headquartered in Andover, Massachusetts. (See *id.*, Ex. Q.) Nor is it disputed that GTG and Tennenbaum announced that Enterasys's headquarters would remain in Andover and that the company would work closely with GTG and Tennenbaum. (*Id.*) GTG, in fact, continues to list Enterasys on its website as part of its "portfolio" of companies. (*Id.*, Ex. R.)

The foregoing proffers, the court agrees, are examples of GTG's persistent involvement in the Massachusetts economy, as reported on GTG's website and in other publicly available sources.[7] For present purposes, therefore, the court believes that Plaintiff has made a sufficient showing that GTG (1) engaged or solicited business in Massachusetts, (2) engaged in any other persistent course of conduct in Massachusetts, and/or (3) derived substantial revenue from goods used or consumed in Massachusetts. Accordingly, in this court's estimation, personal jurisdiction

---

7. Given the broad scope of GTG's operations and the emerging prominence of Massachusetts in the high-technology world, other connections possibly exist as well. For example, Plaintiff notes that an entity entitled "Gores Asset Holdings, Inc.," which is headed by Alec Gores and which shares a Colorado address with GTG, is registered in the Secretary of the Commonwealth's Office to do business in Massachusetts. (See *id.*, Ex. S.)

over GTG is authorized by section 3(d) of Massachusetts's long-arm statute.

### 3. Due Process

■ Believing that GTG's contacts satisfy the Massachusetts long-arm statute, the court must also analyze whether personal jurisdiction over GTG comports with due process. In general, this means that GTG must "fairly be said to have participated in the economic life of Massachusetts." *Shipley Co. v. Clark,* 728 F.Supp. 818, 822 (D.Mass.1990) (citing *Bond Leather,* 764 F.2d at 928). The First Circuit has designated "three distinct components" to this inquiry: "relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness." *Foster–Miller,* 46 F.3d at 144. Although all three components typically must be satisfied, they are viewed on a "sliding scale" such that· "an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 210 (1st Cir.1994). For the reasons which follow, the court believes that jurisdiction over GTG comports with due process.

### 1. Relatedness

The relatedness component—"that a suit arise out of, or be related to" the defendant's in-forum activities—usually ensures that these activities caused the injuries. *Ticketmaster–New York,* 26 F.3d at 206, 207. To be sure, it is difficult for Plaintiff to make this showing since, as indicated above in the context discussing section 3(a), the court does not necessarily agree that MPC's infringement should be imputed to GTG for such jurisdictional purposes. The fact that this is also a section 3(d) case, however, alters the analysis in Plaintiff's favor.

Section 3(d) "has been said to reflect the theory of 'general' jurisdiction." *Digital Equip. Corp. v. AltaVista Tech., Inc.,* 960 F.Supp. 456, 467 n. 23 (D.Mass.1997). According to the Supreme Court, "with 'general' jurisdiction ... 'a State exercises personal jurisdiction over a defendant in a suit *not arising out of or related to* the defendant's contacts with the forum.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73 & n. 15, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (emphasis added)). And as District Judge William G. Young explained in *Landmark Bank v. Machera,* 736 F.Supp. 375 (D.Mass.1990), "[t]he theory underlying subsection 3(d) is that the contacts between the defendant and Massachusetts are so pervasive and continuing that personal jurisdiction is authorized for any tortious injury caused by the defendant in the Commonwealth, *even absent a nexus between the contact and the cause of action." Id.* at 384 (emphasis added). *See also Keds Corp. v. Renee Int'l Trading Corp.,* 888 F.2d 215, 219–220 (1st Cir.1989) (no mention of relatedness in due process inquiry in section 3(d) case). This appears to be the situation here. Moreover, as noted below, this court believes that the two other due process factors strongly favor Plaintiff as well.

Before turning to those analyses, however, the court makes one final point. Even though the court is unwilling, for the reasons stated, to import GTG's purported vicarious liability for MPC's alleged infringement into the section 3(a) calculus (see *supra* at II(B)(2)(a)), GTG's asserted control over MPC cannot be totally ignored. According to the First Circuit, "[s]ince the essence of personal jurisdiction is to bring responsible parties before the court, a corporation which is actually responsible for [another]'s decision to un-

dertake instate activities should, in all fairness, be within the state courts' jurisdictional reach." *Donatelli v. Nat'l Hockey League,* 893 F.2d 459, 466 (1st Cir.1990). That statement captures the particular situation here.

### 2. *Purposeful Availment*

The parties recognize that the purposeful availment requirement protects a defendant from jurisdiction based solely on "random, isolated, or fortuitous" contacts with a forum. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). Thus, a plaintiff must usually demonstrate that the defendant's contacts "represent a purposeful availment of the privilege of conducting activities in [Massachusetts], thereby invoking the benefits and protections of its laws and making the defendant's involuntary presence before [a Massachusetts] court foreseeable." *Pritzker v. Yari,* 42 F.3d 53, 61 (1st Cir.1994) (citation and internal quotation marks omitted). On this score, the court finds Plaintiff's argument more than sufficient, again assuming that personal availment need even be considered. *See Foster–Miller,* 46 F.3d at 144 (explaining that relatedness and purposeful availment requirements need not be explored in a general jurisdiction case).

As described in the court's section 3(d) analysis, there is undisputed evidence that, throughout the period in question, GTG played an active role in the Massachusetts economy. Indeed, as the First Circuit has noted, "[p]hysical contact with the state is not [even] required" in a section 3(d) case "if the defendant has purposely directed activity toward the forum state." *Keds Corp.,* 888 F.2d at 219. Here, the court believes beyond peradventure of doubt that GTG, through its numerous corporate transactions—not to mention its alleged supervision and control of MPC, an entity that allegedly infringed a Massachusetts resident's copyright—purposely availed itself of the privilege of conducting business activity in Massachusetts.

### 3. *Reasonableness*

■ Finally, the court concludes with respect to the third component of the typical due process inquiry that Plaintiff has demonstrated that personal jurisdiction over GTG would be reasonable. The reasonableness requirement ensures that the assertion of jurisdiction over a defendant "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In analyzing this component, courts typically weigh five elements, often described as "gestalt factors": "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Foster–Miller,* 46 F.3d at 150.

With regard to the first factor, GTG argues that it would be a substantial burden to defend itself in Massachusetts given its great distance from California. The court respectfully disagrees. GTG is an investment and management company with, apparently, significant financial resources. *See Tatro v. Manor Care, Inc.,* 416 Mass. 763, 625 N.E.2d 549, 554–55 (1994) (noting that it is not unreasonable to require a large California business, including a legal department, to defend itself in

Massachusetts). And clearly, GTG has engaged in a number of large-scale business transactions in Massachusetts.

The second factor favors Plaintiff as well. As Plaintiff asserts, Massachusetts has a strong interest in being able "to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors." *Daynard,* 290 F.3d at 62 (citation omitted). It is also worth recognizing that several of Plaintiff's causes of action, *e.g.,* his unfair competition and chapter 93A claims, require analysis of Massachusetts law. *See Champion Exposition Servs., Inc. v. Hi-Tech Elec., LLC,* 273 F.Supp.2d 172, 179 (D.Mass.2003) (holding that it is "doubly true" that Massachusetts has a significant interest when the underlying cause of action "is governed by Massachusetts law").

As for the third factor, Massachusetts is clearly the most convenient forum for Plaintiff, in particular because the case against MPC will obviously remain here. Moreover, there is no evidence that Plaintiff has either immense resources or ready access to counsel in California. "[G]iven the traditional deference accorded to a plaintiff's choice of forum," *Daynard,* 290 F.3d at 62, the third factor too weighs heavily in favor of the court's exercising personal jurisdiction over GTG.

The fourth and fifth factors, in the court's view, do not help GTG's cause either. As in *Daynard,* the "efficient administration of justice favors jurisdiction in Massachusetts, where the action is already proceeding against [the other defendant]," *i.e.,* MPC. *Id.* at 62–63. And the ability of Plaintiff to pursue his claims in Massachusetts arguably furthers the interest of all sovereigns in promoting respect for copyright and providing an avenue for Plaintiff, as a Massachusetts resident, to hold liable an entity that allegedly had the ability to control infringement of his copyright and profited from that infringement.

### III. CONCLUSION

For the reasons stated, the court believes that Plaintiff's claims against GTG ought not to be dismissed on their merits and that personal jurisdiction over GTG is warranted. Accordingly, the court recommends that GTG's motion to dismiss be DENIED.[8]

March 14, 2007.

8. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1 st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604 (1 st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.