SUPREME JUDICIAL COURT 
 
 GUARDIANSHIP OF WILSON (and a companion case[1])

 
 Docket:
 SJC-13668
 
 
 Dates:
 December 4, 2024 – May 19, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, & Wolohojian, JJ.
 
 
 County:
 Essex
 

 
 Keywords:
 Practice, Civil, Guardianship proceeding, Parties, Notice of appeal, Dismissal of appeal
 
 

             Petitions filed in the Essex County Division of the Juvenile Court Department on November 17 and 20, 2023.
            A motion to dismiss was heard by Karen E. Hennessy, J.
            The Supreme Judicial Court on its own initiative transferred the cases from the Appeals Court.
            Roberta Driscoll-Weiss (Jamie Wallerstein also present) for the children.
            Tracy L. Koral for Department of Children and Families.
            GAZIANO, J.  Two children in the custody of the Department of Children and Families (DCF) appeal from the dismissal of guardianship petitions filed in the Juvenile Court by their great-aunt and great-uncle, who are residents of Pennsylvania.  In granting DCF's motion to dismiss the petitions, the judge concluded that it would be a violation of the Interstate Compact on the Placement of Children, G. L. c. 119 App., §§ 2-1 et seq. (ICPC), "to allow for a guardianship" where Pennsylvania had denied the interstate placement of the children.  As ground for the denial, Pennsylvania authorities determined that the placement did not comply with the laws of Pennsylvania -- the "receiving" State under the ICPC -- because the great-uncle had been convicted of two felonies in the 1990s.
            On appeal, the children principally argue that the ICPC does not apply to placements with out-of-State relatives who seek to become guardians rather than foster or adoptive parents.  DCF argues to the contrary and further contends that the children's appeal must be dismissed because their great-aunt and great-uncle, who are indispensable parties, did not appeal from the dismissal of the guardianship petitions.
            Particularly in this context, where the appellants request that we reverse the dismissal of the guardianship petitions filed by parties who are not before us, we cannot proceed without those parties, whose rights would be affected by our decision.  Accordingly, we conclude that the absence of the great-aunt and great-uncle compels the dismissal of this appeal.[2]
            1.  Background.  a.  Facts.  The children are siblings.  Wilson (brother) was nine years old and Danna (sister) was seven years old at the time the guardianship petitions were filed.  The children spent the first four years of their lives with their great-aunt and great-uncle (together, relatives) in Massachusetts.  Sometime after the relatives relocated to Pennsylvania for the great-uncle's work, the children moved in with their paternal grandmother.  At some point thereafter, however, the grandmother had to return the children to the care of their mother because the grandmother lost her housing and was unable to meet the children's needs.  The children's mother lived with her boyfriend and his family at the time.  While in the care of their mother, the children often missed school.
            In January 2021, DCF received a report from a mandatory reporter, pursuant to G. L. c. 119, § 51A, alleging neglect of the children and detailing a domestic violence incident in which one of the children witnessed the boyfriend hitting the mother.  DCF received a second § 51A report the following day also alleging neglect of the children.  The day after, DCF filed a care and protection petition pursuant to G. L. c. 119, § 24, and it was awarded temporary custody of the children three days later.  The mother's parental rights were later terminated, and the children currently remain in DCF's permanent custody.
            In July 2023, after the relatives expressed interest in taking custody of the children, DCF submitted an ICPC request to Pennsylvania for a home study of the relatives' home on behalf of the children.[3]  On August 16, 2023, Pennsylvania responded to the ICPC request, denying both the request for the home study and placement of the children with the relatives pursuant to art. III(d) of the ICPC.  As the sole reason for the denial, Pennsylvania cited the great-uncle's conviction of two felonies, which made him ineligible to work or volunteer with children and, in turn, prevented his licensure as a "kinship caregiver" for the children.  See 23 Pa. Cons. Stat. § 6344.
            Following the denial, counsel for the children commissioned an independent home study, which concluded that the great-uncle's convictions were not indicative of his present fitness for guardianship.  The home study described the great-uncle's background as follows:  He was raised in an "abusive home" in Massachusetts where he was exposed to criminal activity at a young age.  In 1995 and 1996, he was convicted of unlawfully carrying a firearm and assault and battery by means of a dangerous weapon in Massachusetts.  After he was released from prison, he moved in with extended family to distance himself from his old neighborhood, started working at a logistics company, and sought counselling to address his anger issues.  By all accounts included in the independent home study, the great-uncle has been an upstanding member of society ever since.
            In an interview with the great-uncle, the director of the private adoption agency assigned to conduct the independent home study noted that he "spoke readily of his past, and never tried to say it wasn't his fault" and that "it is evident that he has left his past in the past, and intentionally built a life for himself and his family that he could be proud of."  In closing, the director unequivocally recommended the relatives for guardianship and concluded that the great-uncle "appears to be physically, mentally, and emotionally stable and suited for . . . guardianship or other custody arrangements."[4]
            The children currently live in Massachusetts, but under separate arrangements.  The sister lives in a residential placement, while the brother is placed with a maternal relative, a "kinship resource."  The children visit each other two or three times per month and attend therapy sessions together.
            b.  Procedural history.  In November 2023, the great-aunt and great-uncle filed petitions in the Juvenile Court seeking guardianship of the children pursuant to G. L. c. 190B, § 5-201.  Shortly thereafter, DCF moved to dismiss the guardianship petitions, arguing that placement of the children with the relatives would violate the ICPC.
            After a nonevidentiary hearing, the judge allowed DCF's motion to dismiss on January 17, 2024.  In dismissing the petitions, the judge noted that the independent home study was "very persuasive," but ultimately concluded that allowing the guardianship petitions was outside her authority, as Pennsylvania's denial barred the requested placement under the ICPC.  The children filed a motion for reconsideration, which was denied on January 26, 2024.
            Although the children had filed timely notices of appeal on January 22, 2024, from the order allowing the motion to dismiss, the relatives did not.  Instead, on April 22, 2024, in the Appeals Court, the relatives filed a motion for leave to file a late notice of appeal, which was denied without prejudice by a single justice of that court.  On May 16, 2024, the relatives filed a status report in the Appeals Court indicating their continued interest in acting as guardians for the children.  The relatives never filed a notice of appeal, nor did they renew their motion to file a late notice of appeal with the Appeals Court.  We transferred the appeal on our own motion.
            2.  Discussion.  The children argue that the relatives' status report, in which they "attest that they remain committed to serving as permanent guardians of [the children]" is sufficient indication of their intent to appeal from the denial of the guardianship petitions and that, therefore, the appeal can proceed without them.  We disagree.
            The Massachusetts Rules of Appellate Procedure provide that a notice of appeal must, at the very least, designate the name of the "party or parties taking the appeal," Mass. R. A. P. 3 (c) (1), as appearing in 491 Mass. 1601 (2023), and that the notice in a child welfare case must be "filed within 30 days from the date of the entry of the judgment, decree, appealable order, or adjudication," Mass. R. A. P. 4, as appearing in 481 Mass. 1606 (2019).  Here, only the children filed timely notices of appeal.  The relatives, after missing the thirty-day deadline, moved for leave to file a late notice of appeal with a single justice of the Appeals Court.  In acting on that motion, the single justice stated that "[t]o the extent the motion is intended to establish the proposed guardian's status as parties to this appeal, it is denied without prejudice to a renewed motion showing that the proposed guardians themselves filed the petitions for guardianship in the juvenile court (a matter that is unclear from the juvenile court assembly of the record transmitted to this court) or are otherwise entitled to appeal the denial of the petitions."  While the relatives filed the aforementioned status report on May 16, 2024, they did not renew their motion to file a late notice of appeal with the Appeals Court; nor did they respond to the single justice's request for clarification as to whether the relatives had themselves filed the guardianship petitions in the Juvenile Court.
            Generally, a court will not proceed to a final determination without an indispensable party.  See Franks v. Markson, 337 Mass. 278, 283 (1958).  See also Guardianship of Tara, 97 Mass. App. Ct. 11, 12 (2020) (dismissing children's appeal from denial of guardianship petition where prospective guardian did not file notice of appeal).  Cf. Browning v. Preece, 392 S.W.3d 388, 391 (Ky. 2013) ("an indispensable party is defined as a party whose absence prevents the Court from granting complete relief among those already parties" [quotation and citation omitted]); Asch v. Friends of the Community of Mount Vernon Yacht Club, 251 Va. 89, 91 (1996) (parties are indispensable when their "interests in the subject matter of the suit, and in the relief sought, are so bound up with that of the other parties, that their legal presence as parties to the proceeding is an absolute necessity, without which the court cannot proceed").
            Here, the relatives are indispensable parties to this appeal.  The interests of the relatives (in their appointment as guardians of the children) and the relief sought by the children (that we vacate the dismissal of the guardianship petitions) are so intertwined that we cannot grant the children's requested relief in the absence of the relatives.  While the relatives filed a single status report nearly a year ago in which they indicated that they "remain committed to serving as permanent guardians," this is insufficient to ensure their continuing commitment to date, as would be the case had they joined in the appeal.  See Tara, 97 Mass. App. Ct. at 12.  See also G. L. c. 190B, § 5-206 (c) (conditions for appointment of guardian include "find[ing] that a qualified person seeks appointment" [emphasis added]).
Appeal dismissed.
 
footnotes

 
            [1] Guardianship of Danna.  The names are pseudonyms.
            [2] Because we dismiss this appeal for lack of indispensable parties, we need not reach the children's argument that the ICPC does not apply to the proposed guardianship placement with their great-aunt and great-uncle.
            [3] A home study is defined in the ICPC context as "an evaluation of a home environment conducted in accordance with applicable requirements of the state in which the home is located, to determine whether a proposed placement of a child would meet the individual needs of the child, including the child's safety, permanency, health, well-being, and mental, emotional and physical development."  Association of Administrators of the Interstate Compact on the Placement of Children, Interstate Compact on the Placement of Children (ICPC) Regulations, Regulation No. 3, at 19-20, https://aphsa.org/wp-content/uploads/2024/10/ICPC-Regulations_TOC.pdf [https://perma
.cc/WBT3-8GZB].
            [4] The great-aunt received a similarly positive review and was also recommended for guardianship.  She is the sister of the children's paternal grandmother.